Jay Rose, Plaintiff, *v.* Jasima Realty Corporation, Defendant.

Second Department, December 23, 1926.

Deeds — restrictive covenants — action by vendor to compel specific performance of contract for sale of real property in Brooklyn — original grantor restricted lot sold against use for offensive purposes but reserved right to modify restrictions — no proof that other lots in subdivision were sold with mutual restrictions — original grantor made agreement with plaintiff authorizing use of property for public market — original grantor alone could enforce restrictions and had right so long as he owned part of land to modify or abrogate them — maintenance of public market not offensive use.

In this action to compel the specific performance of a land contract for the sale of a lot in the city of Brooklyn to the defendant, which lot is a part of a subdivision, the defense that the property is subject to certain restrictive covenants prohibiting the use of the property for the erection of a building commonly known as a public market, cannot be sustained, where it appears that, while the original grantor conveyed one of the lots by deed containing a restriction prohibiting the use of the property for any offensive

purpose, that deed contained the further covenant that the grantor should have " the right to use and to grant the right to use for all purposes all of the lots fronting on Utica Avenue; " that the original grantor entered into an agreement with the plaintiff, modifying the restrictions and authorizing the plaintiff to use the lot in question for the purpose of erecting a building thereon to be used as a public market; and that there is no proof that other lots in the same subdivision were conveyed to third persons with mutual restrictive covenants.

The provision in the original deed, authorizing the grantor to use or to grant the right to use for all purposes all lots fronting on Utica avenue reserved to him the right to modify or abrogate the restrictions, and, therefore, since that restriction was for the sole benefit of the land retained by the grantor, his grantees could not enforce it, one against the other, and he had the right thereunder to modify or abrogate the restriction, and hence the agreement entered into between the original grantor and the plaintiff had the effect of doing away with any restriction which might have prevented the use of the lot in question for the erection of a building to be used as a public market.

Furthermore, a building used as a public market does not constitute an offensive use or purpose within the meaning of the restrictions contained in the original deed.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Joseph J. Schwartz,* for the plaintiff.

*Bernard Gordon,* for the defendant.

MANNING, J. The agreed statement of facts contains the following recitals:

That the plaintiff is the owner of lots 6 and 7 on a certain map entitled " Map of Beverly Square, situated in Section 15 of the Borough of Brooklyn, * * * and filed in the office of the Register of Kings County on the 15th day of February, 1923, as map No. 1866," which said lots are situate on the northwest corner of Utica and Tilden avenues.

That Utica avenue is a business street, on both sides of which are stores, markets and private dwellings, and in the center of which are trolley tracks.

That on June 21, 1926, plaintiff and defendant entered into a written contract for the purchase and sale of the property, defendant paying plaintiff the sum of $750 on account of the purchase price.

That by the terms of the contract a full covenant and warranty deed was to be delivered.

That the premises were subject to two mortgages aggregating $7,000, " and to restrictive covenants and zone restrictions, not prohibiting, however, the erection of a building commonly known as a public market thereon."

That the closing of title was adjourned from time to time by mutual consent, and that finally defendant refused to take title on the ground that the premises were subject to " covenants and restrictions " contained in a deed in the chain of title, said deed having been delivered by Edmund G. Burke, the original grantor, to one Demetrookas.

That the restrictive part of the deed declared that the premises were " subject to easements and right of the party of the first part to grant easements " for the erection and maintenance of telephone and electric light poles, and the installation of pipes, wires and cables in the rear of all lots shown on the map referred to; and subject also to the right reserved by the party of the first part, his heirs, executors, administrators and assigns, to permit water mains, gas mains, sewers, etc., " in any one or all of the streets in said plan of Beverly Square," and, subject to consents, to grant easements for the installation of a rapid transit railroad on Utica avenue.

That the Burke deed also contained the following:

"And the said party of the second part for himself, his heirs, executors or administrators and assigns as follows: that neither the said party of the second part nor his heirs or assigns will erect or permit on any part of the herein described premises any building except a dwelling house or business house or both and such garage as is appurtenant thereto except as hereinbefore provided and such dwelling house shall cost not less than $5,000. * * * *Nor shall there be built on said premises or any part thereof any building for an offensive use or purpose or be used for burial purposes or as a cemetery.*

"And that the party of the second part * * * does hereby further covenant and agree to and with said party of the first part * * * that the party of the first part shall have the right to erect or maintain or permit to be erected or maintained on any part of Beverly Square single buildings or buildings in blocks * * * but no such buildings shall be erected unless the plans and specifications for same shall have been first submitted to and approved by the party of the first part and the party of the first part shall have the right to use and to grant the right to use for all purposes all of the lots fronting on Utica Avenue."

The agreed statement of facts then recites that on August 18, 1926, Burke gave to Rose, the plaintiff herein, for a valuable consideration, an instrument which reads in part as follows:

" Whereas the party of the second part is now the owner of the said premises and has requested the party of the first part to modify the said restriction so as to grant to the party of the second part, his heirs and assigns the right to use the said premises as herein-

after provided and the party of the first part being the owner of other premises shown on said map, having agreed to such modification:

"*Now, therefore,* in consideration of the sum of One dollar and other good and valuable considerations paid by the party of the second part to the party of the first part, the receipt whereof is hereby acknowledged, the party of the first part hereby consents that the said restrictive covenants be and the same hereby are changed and modified so that the party of the second part, his grantees, heirs and assigns shall have the right, and they hereby are granted the right, to use the said premises for the erection and maintenance of a public market for the purchase and sale of any and all kinds of goods, wares and merchandise, including any and all articles of food of every kind and description whatsoever in the same manner as though the said original restrictive covenants have never been made."

The remainder of the agreed statement of facts is as follows:

" VIII. The defendant although willing to perform the said contract refused to accept the title to the said premises on the ground that the restrictive covenants are still in force and that its existence does or might prohibit the erection or maintenance on the said premises of a public market for the purchase and sale therein of any and all kinds of goods, wares and merchandise, including any and all articles of food of every kind and description, and that the said Edmund G. Burke is without power to modify the said restrictive covenant so as to permit the use of the said premises for such public market.

" IX. The plaintiff contends that the said restrictive covenant does not prohibit the use of the said premises for the purpose aforesaid and further that if it did so prohibit the same, that such prohibition is removed by the said agreement of Edmund G. Burke, mentioned in paragraph ' VII ' hereof, because the said covenant expressly reserves to the said Edmund G. Burke the right to use or grant the use for all purposes all the lots fronting on Utica Avenue and that the said premises do front on Utica Avenue.

" X. It is conceded that the parties hereto were otherwise ready, able and willing to perform the said contract, and the actual tender of the deed and of the balance of the purchase price has been waived by the parties hereto.

" The controversy submitted for decision is whether, upon the foregoing facts, the plaintiff is entitled to judgment compelling the defendant to perform the said contract by accepting a deed to the said premises and paying the balance of the purchase price therein provided for, or whether the defendant is entitled to the

return of the $750 paid to the plaintiff and the charges for the examination of the title to the said premises — but without costs to either party in any event."

The vital provisions of the covenants referred to are, in my opinion, the following: (1) " *nor shall there be built on said premises or any part thereof any building for an offensive use or purpose,*" and (2) " *the party of the first part shall have the right to use and to grant the right to use for all purposes all of the lots fronting on Utica Avenue.*" One of the questions presented is whether Burke, having reserved to himself the power to grant the right to use the lots for all purposes, has the right, in view of the circumstances, to grant permission for the use of the premises as a public market.

It is settled that where the owner of a tract subdivides it and sells parcels thereof to separate grantees, imposing restrictions in accordance with a general plan or scheme for uniform development, such restrictions may be enforced by one of the grantees against any other grantee. (*Korn* v. *Campbell*, 192 N. Y. 490; *Tallmadge* v. *East River Bank*, 26 id. 105.) And where one of such parcels is sold to a person having notice of the general plan or scheme, the restrictions may be enforced as against him irrespective of whether they were incorporated in his conveyance, or whether he and the person seeking enforcement derived title from the same grantor. (*Silberman* v. *Uhrlaub*, 116 App. Div. 869.)

But in the agreed statement of facts it is not stated that the property known as Beverly Square was conveyed to separate owners by deeds containing restrictive covenants for their mutual benefit. The restrictive covenant reserved to Burke, the grantor, as to the lots fronting Utica avenue, the right " to grant the right to use for all purposes all of " such lots. This is consistent with but one assumption, *i. e.,* that the covenant was not for the benefit of other grantees, but for the grantor's benefit only. A covenant which the grantor may cancel at will cannot be for the benefit of any one but him.

Nor is there anything in the agreed statement of facts, or anywhere else in the record, to show that Burke, the original grantee, did sell part of the tract to others. In the contract that he made with the plaintiff, modifying the covenant in question, it is stated that he, Burke, is " the owner of other premises shown on said map; " but, for aught that appears, the " other premises " may mean all of the tract that remained to him at the time he gave to his immediate grantee the deed containing the covenant. So far as the record shows, the restrictions were imposed for the benefit of Burke, or for the benefit of the land that remained to him after he parted with title to the lots in question.

Where restrictions are for the sole benefit of the land retained by the grantor, the grantees cannot enforce them against one another. The grantor alone has the power of enforcement, and by him they may be enforced against the original covenantor and also against the covenantor's successors in title who are chargeable with notice. (*Korn* v. *Campbell, supra; Hodge* v. *Sloan,* 107 N. Y. 244.) And the exclusive power to enforce carries with it the power to modify, so long as the grantor retains part of the tract in his possession.

The defendant claims that the covenant provides that the property shall not be put to " an offensive use or purpose " and that the maintenance of a public market would be an offensive use. He overlooks the fact that that provision was inserted for the benefit of Burke, the grantor, and that Burke could waive it by virtue of the subsequent provision that " the party of the first part shall have the right to use and to grant the right to use for all purposes all of the lots fronting on Utica Avenue."

If it be contended that a public market is a public nuisance, an answer is, that it is the defendant himself who wishes to use the property for that purpose. A public market is not inherently a nuisance, although the selling of diseased meat therein, or anywhere else for that matter, is a nuisance. If a market be *per se* a nuisance, there would be many vacant stores throughout the city. A well-conducted market is no more offensive than any other establishment.

We must rely solely on the facts presented and are not permitted to draw inferences. As stated in *General Com. Co., Ltd.,* v. *Butterworth-Judson Corp.* (198 App. Div. 799, 801): "A submission of a controversy is strictly limited to the consideration of questions of law arising upon an agreed state of facts, and the court is not permitted to find by inference any other facts in addition to those stipulated by the parties."

Therefore, upon the limited facts here presented, I am forced to conclude that the plaintiff is entitled to a judgment compelling defendant to accept a deed of the property and to conform in other respects to the terms of the contract. I reach this conclusion for the following reasons:

1. It does not appear in the agreed statement of facts that other land in the Beverly Square section was burdened with the same covenant so that any grantee thereof could enforce it as against Rose, the present owner.

2. It does appear from the agreed case that the covenant was made for the benefit of Burke, that he reserved the power to modify it, and that he did modify it.

3. That the maintenance of a public market upon the property would not be an offensive use within the meaning of the restrictive covenant.

The plaintiff should have judgment upon the agreed statement of facts, with costs.

JAYCOX and KAPPER, JJ., concur; KELLY, P. J., and LAZANSKY, J., concur upon the ground that the maintenance of a public market on the property would not be an offensive use within the meaning of the restrictive covenant. LAZANSKY, J., concurs upon the further ground that as defendant's claim of right to reject title is placed upon the ground that such use of the premises would be offensive to the restrictive covenant, plaintiff is entitled to judgment, although the right reserved to Burke " to use and to grant the right to use for all purposes all of the lots fronting on Utica Avenue " does not apply to the property in question.

Judgment for plaintiff upon agreed statement of facts.