[Civ. No. 15095.  Second Dist., Div. Three.  Oct. 14, 1946.]

HUGH B. MARTIN et al., Respondents, v. FREDERICK RAY et al., Appellants.

Julius V. Patrosso for Appellants.

Chas. L. Nichols for Respondents.

KINCAID, J. pro tem.—Defendants Frederick and Mary Louise Ray appeal from a judgment in favor of plaintiffs in the sum of $1,000 and requiring them to remove from certain property owned by them, designated as Parcels A and C, a building or structure placed on each of said parcels as being violative of certain building restrictions. Judgment was also awarded in favor of plaintiffs and against the defendant Garden Land Company, Ltd., a corporation, hereinafter for purposes of brevity referred to as Garden, in the sum of $10, from which no appeal has been taken.

The evidence reveals that Garden was the original sub-divider of the tract and that plaintiffs purchased some property therein from it in 1936, of which the involved parcels of land were a part. In July, 1936, they sold and conveyed to a Mrs. Moore a portion of the property so purchased, which is

referred to in this case as Parcel A. In December, 1937, Mrs. Moore sold and conveyed this parcel to defendant Mary Louise Ray. In the same month, plaintiffs sold and conveyed to such defendant two additional portions of the property purchased by them from Garden, which are denominated herein Parcels B and C. Garden originally imposed certain building restriction conditions in its deeds to plaintiffs, as well as to owners of adjacent properties. The subsequent conveyances, however, have created a different situation as between Parcels A and C, so far as the binding effect of such conditions on the grantees thereof may be concerned.

The original deed by Garden to plaintiffs covering A, made such conveyance subject to a list of enumerated conditions, followed by a proviso that any breach thereof shall cause said premises to revert to Garden, its successors or assigns. The two subsequent conveyances of this property from plaintiffs to Mrs. Moore and from the latter to defendant Mary Louise Ray were silent as to any conditions whatsoever save that they were made subject to those of record. Parcel C came to plaintiffs by way of original deed from Garden with the same conditions imposed as were applied by it to A. Title to C remained in plaintiffs until they conveyed this property to defendant, Mary Louise Ray. By this latter deed plaintiffs, in addition to providing that the conveyance was taken subject to conditions of record, added the further proviso that it was made and accepted subject to all of the subsequently enumerated conditions, whereupon plaintiffs set forth in detail all the building restriction conditions contained in the original deed from Garden to plaintiffs. Plaintiffs then inserted a further provision that any breach thereof shall cause said premises to revert to plaintiffs, their successors or assigns.

## CONCERNING PARCEL A.

As to A, the trial court found that the defendants have constructed a so-called gate house which has, in some particulars, been violative of the restrictive conditions contained in the deeds from Garden to plaintiffs, from plaintiffs to Moore, and from the latter to Mary Louise Ray. The court, by amendment to its findings of fact, further found that defendants knew of the restrictive conditions originally imposed by Garden as to each of such parcels, as well as to other adjacent property, by deeds embracing what amounts to a general uniform subdivision and restriction plan and that

because of such knowledge it would be inequitable to permit a violation thereof as to A, as well as to C. Defendants challenge the right of plaintiffs to enforce, as to Parcel A, the conditions or building restrictions contained in the deed thereto from Garden to plaintiffs, or in the successive deeds, upon either theory as recited in the findings.

To sustain the court's finding that the claimed violations are enforceable by plaintiffs through such deeds, it is necessary for plaintiffs to establish the fact that the restrictions are cast in the form of covenants, the breach of which may cause a reversion and are not in fact mere conditions. If they may be deemed to be covenants they can be given force as between the parties hereto only by showing them to be of a character whereby (a) the burden imposed by them was one upon the land conveyed and incident to its ownership, so that when defendants acquired this property it was taken subject to such burden; and (b) the benefit of the covenants was an incident of the ownership of the other lots or parcels in the tract, so that when the original subdivider Garden parted with them, the benefit of the covenants passed with them as an incident of their ownership and the plaintiffs are now entitled to such benefit as the present owners of such property. In order that such covenants have force, not merely as between the original parties, but as between plaintiffs and defendants, it must appear that their insertion in the deed by Garden was, in effect, the creation of what amounts to a servitude, to the burden of which Parcel A was subjected as the servient tenement, and to the benefit of which the remainder of the tract was entitled as the dominant tenement. (*Werner* v. *Graham* (1919), 181 Cal. 174, 180 [183 P. 945].)

The circumstances surrounding the original grant of title to Parcel A by Garden to plaintiffs, followed by subsequent grants by virtue of which defendant Mary Louise Ray took title, are very similar to those existing in the case just cited, and from which we hereafter quote (page 181). Garden, as the owner of the tract, sold part of it to plaintiffs, exacting of them restrictive provisions as to its use, "but without a word indicating that the land conveyed is part of a larger tract, the balance of which the grantor still retains, or that the restrictions are intended for the benefit of other lands, or that their benefit is to inure to or pass with other lands, and without any description or designation of what is an essential

element of any such servitude as is claimed, namely, the land which is to be the dominant tenement. Servitudes running with the land in favor of one parcel and against another cannot be created in any such uncertain and indefinite fashion. It is true, the nature of the restrictions is such that, when considered in connection with the fact that Marshall still retained the greater portion of the tract, it is not improbable that he exacted them for the benefit of the portion so retained. But the grantee's intent in this respect is necessary, as well as the grantor's, and the deed, which constitutes the final and exclusive memorial of their joint intent, has not a word to that effect, nor anything whatever which can be seized upon and given construction as an expression of such intent. If such was their intent, it has not been expressed. Omitting, as we must, any consideration of what the understanding was between Marshall and his grantees, except as shown by the instruments between them, and construing the deed in the light of the fact that Marshall was at the time the owner of a large number of other lots in the tract, it may yet well be that the grantee intended to obligate himself only to Marshall, his heirs and assigns. Certainly, that is all that is said. It is also difficult to see how there can be any valid creation of what is practically a servitude without some designation or description of what is an essential factor, namely, the dominant tenement. [Citing cases.] The fact also that the only expression in the deed as to who may act in case of a breach of the restrictions is that in such case the land shall revert to Marshall, his heirs or assigns, is strongly indicative of the fact that it was intended that Marshall, his heirs or assigns, should alone have the right to act. [Citing cases.] It is not possible, in view of these considerations and the rule of strict construction very properly applicable, reasonably to construe the restrictions as covenants which run, not to Marshall, his heirs or assigns, but to Marshall as the owner of certain land not designated or described and to his various successors in interest in such land. This view is amply supported by authority. [Citing cases.]''

That the restrictions herein imposed by the deeds as to Parcel A must be construed as running only to Garden or its assigns, and not to plaintiffs or other owners of property in the tract, is further shown by the case of *Wing* v. *Forest Lawn Cemetery Assn.* (1940), 15 Cal.2d 472 [101 P.2d 1099, 130 A.L.R. 120]. In discussing the law applicable to a factual

situation such as is here presented, the court said (p. 479):
"The law is well settled in California, that the deed is the
final and exclusive memorial of the intention and rights of
the parties. [Citing cases.] Furthermore, any provisions of
an instrument creating or claimed to create such a servitude
will be strictly construed, any doubt being resolved in favor
of the free use of the land. [Citing cases.]'' ▇ As was said in
*Moe* v. *Gier* (1931), 116 Cal.App. 403, 409 [2 P.2d 852]:
"The language in the deeds involved herein did not create
equitable servitudes. To create an equitable servitude in the
grant of lands in a large area it is essential that there must
be a general scheme of restrictions sufficiently uniform in
character to indicate unmistakably a designated and adopted
plan throughout common to all purchasers of lots. The re-
strictions must not only appear in one deed, but in all the
deeds and must expressly declare that such restrictions are
for the benefit of and run with all other lots in the designated
area. In other words,'the restrictions must be for the mutual
benefit of all parcel owners and each lot imposed with a serv-
itude for the benefit of each and every other lot. It is neces-
sary to state in the deed what is the servient and what is
the dominant tenement. (See *Bergman* [sic] v. *Hotel Savoy,*
160 Cal. 559 [37 L.R.A.N.S. 5, 117 P. 677]; *Werner* v. *Gra-
ham,* 181 Cal., at 174 [183 P. 945]; *McBride* v. *Freeman,* 191
Cal. 152 [215 P. 678].) The intent of the parties to create
mutual and reciprocal rights of restrictions between the gran-
tees of the original grantor must appear in the deed. (*Gamble*
v. *Fierman,* 82 Cal.App., at p. 182 [255 P. 269].)''

` ▇ Plaintiffs urge the sufficiency and soundness of the
second theory as expressed by the court's findings to the
effect that because defendants, at the time of taking title
to Parcel A from Moore, knew of the restrictive conditions
originally imposed upon it by Garden, and that similar re-
strictions were likewise included in the deeds to adjacent
properties, they thereby were charged with knowledge that
it was the intention of such subdivider to adopt a general
uniform subdivision restriction plan, and that because of
such knowledge equity would not permit them to do or per-
form any acts in violation of such plan. A like claim was
urged in *Werner* v. *Graham, supra,* 181 Cal. 174, and in dis-
posing of it contrary to such finding of the court in our in-
stant case the Supreme Court there pointed out (p. 183) that
the original subdivider exacted similar restrictions in all his

deeds and clearly had in mind a uniform plan of restrictions which he intended to, and actually did, impose upon all the lots in the tract as he sold them. He failed, however, as did Garden in its original deeds to Parcel A and adjacent properties, to include any language in the deeds which refers to a common plan of restrictions or which expresses or in any way indicates any agreement between the grantor and grantee that the lot is taken subject to any such plan. These deeds are naturally different from those which include such language and which thereby create mutual equitable servitudes in favor of each parcel as against all the others, the burden and benefit thereof passing to the new owner with each succeeding conveyance as an incident of the ownership of the parcel. The distinction between this class of deed and that wherein no language appears indicating any intent to create such reciprocal rights is clearly demonstrated by the words of the court appearing on pages 184 and 185 of such case, as follows: "The intent of the common grantor—the original owner—is clear enough. He had a general plan of restrictions in mind. But it is not his intent that governs. It is the joint intent of himself and his grantees, and as between him and each of his grantees the instrument or instruments between them, in this case the deed, constitute the final and exclusive memorial of such intent. It is also apparent that each deed must be construed as of the time it is given. It cannot be construed as of a later date, and in particular, its construction and effect cannot be varied because of deeds which the grantor may subsequently give to other parties. Yet that is exactly what is done in the decisions holding that mutual servitudes exist in cases where all the deeds taken together evidence a common plan of restrictions, although no single deed by itself evidences anything more than an intent to put particular restrictions on a particular lot. As a concrete instance, take the first deed given by Marshall. At that time there was nothing to evidence any general plan of restrictions, and if the question as to the effect of the deed had arisen, then it must necessarily have been construed as if no such general plan existed. If it must have been so construed at that time it must be so construed now. Whatever rights were created by the deed were created and vested then, and the fact that it later appears that Marshall was pursuing a general plan common to all the lots in the tract cannot vary those rights. The same is true of each deed as it was given. Nor

does it make any difference that, as claimed by the defendants, Marshall gave each grantee to understand, and each grantee did understand, that the restrictions were exacted as part of a general scheme. Such understanding was not incorporated in the deeds, and as we have said, the deeds in this case constitute the final and exclusive memorials of the understandings between the parties. Any understanding not incorporated in them is wholly immaterial in the absence of a reformation. [Citing cases.] This whole discussion may in fact be summed up in the simple statement that if the parties desire to create mutual rights in real property of the character of those claimed here they must say so, and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them which constitute the final expression of their understanding.''

Plaintiffs strongly rely upon the case of *Martin* v. *Holm* (1925), 197 Cal 733 [242 P. 718], in support of their contention that, through the interposition of equity, they are empowered to enforce these restrictions as against defendants. That case is factually readily distinguishable from the instant case, as is shown by the reference to it in *Wing* v. *Forest Lawn Cemetery Assn., supra,* 15 Cal.2d 472, at page 483, wherein the court said: ''in that case this court held that the deeds and agreements in question expressly contained a covenant on the part of the grantors to subdivide, restricting the entire tract; that the original grantors had in mind a general plan of building restrictions intended for the benefit of all the lots, including their own, that the conveyances which followed each imposed the same or similar restrictions; and that grantees of three lots who took a deed which omitted these restrictions took the same with notice and were bound thereby.

''Since, in this case, there is no designation of a dominant tenement and no expression of any general plan of which plaintiff's conveyance is a part, there is no basis for holding that her deed contained a valid equitable easement in the lands retained by or subsequently to have been conveyed by her grantor.''

Plaintiffs further contend that the doctrine of equitable servitudes may be invoked, although they benefit or restrict only a single parcel of land, without the necessity of showing that any general plan of uniform building restrictions has been imposed. That under certain appropriate con-

ditions this may be the rule is pointed out in *Marra* v. *Aetna Construction Co.* (1940), 15 Cal.2d 375, 378 [101 P.2d 490], but, as is there indicated, a servitude cannot exist in gross, but must be appurtenant to other benefited property. (*Berryman* v. *Hotel Savoy Co.* (1911), 160 Cal. 559 [117 P. 677, 37 L.R.A.N.S. 5].) The lot in question in the Marra case differed from Parcel A herein, in that the deed originally conveying title to it contained an express recitation that the restrictive covenant therein contained was made for the benefit of the adjacent lot, the owner of which was seeking to invoke such equitable principle. Under these circumstances, such a covenant is enforceable as an equitable servitude by the owner of the property declared to be benefited thereby against a grantee of the property so charged. But no statement appears in the deed by which Parcel A was originally conveyed to plaintiffs whereby the restrictive conditions there contained were imposed for the benefit of any property whatsoever. As is pointed out in *Werner* v. *Graham, supra,* 181 Cal. 174, at page 180, such restrictive conditions were "manifestly not for the benefit of the estate conveyed, but to its detriment." ■ It now seems well established in this state that, before a covenant may give rise to or be enforced as an equitable servitude or easement, the deed or other instrument by which it is created must describe with particularity the dominant tenement which is to be benefited by the restriction placed upon the property of the grantee. (*Berryman* v. *Hotel Savoy Co., supra,* 160 Cal. 559, 563; *Werner* v. *Graham, supra,* 181 Cal. 174, 180; *Wing* v. *Forest Lawn Cemetery Assn., supra,* 15 Cal.2d 472, 480.)

### CONCERNING PARCEL C.

As to Parcel C the trial court found that the defendants have constructed thereon a building or structure violative of the imposed restrictions, in that they have moved a substantial portion thereof upon said parcel and have utilized used materials in its construction, that plans of such structure were not previously or at all submitted to Garden for its approval, the structure contained less than 2,000 square feet and was occupied for residential purposes by employees of defendants. As a matter of fact the evidence discloses that the building or structure so dignified by this extensive finding is but a small temporary tent house made of canvas and erected over a wooden floor laid on a few piled brick. It was used

on some occasions as sleeping quarters by an employee of defendants while he was engaged in landscaping their extensive premises. Prior to the trial the tent portion was removed, leaving only the flooring.

Insofar as the court may have attempted, by its findings and judgment, to support the right of plaintiffs to enforce these claimed violations of the conditions contained in the deeds from Garden to plaintiffs covering either Parcel A or C, it has erred. As is shown above the reversion clause in such deeds runs in favor of Garden and its assigns only. However, plaintiffs have an undoubted right to enforce against defendants the conditions which they included in their deed to Parcel C, provided they are able to establish by competent evidence that the defendants committed a breach of such conditions. Defendants argue the insufficiency of the evidence as a matter of law to show any violations thereof. A study of the record discloses that the erection and maintenance of the tent house on C is of much less concern or import to the plaintiffs than is the gate house on Parcel A. In their claim for damages the alleged violations of the conditions applying to C play little part. In awarding damages as against these defendants in the sum of $1,000 the trial court made no allocation as to what portion thereof was being given for the erroneously included gate house and what portion for the tent house. The two were lumped into one general damage allowance. As a new trial is necessary in any event because of the elimination of the first factor as a basis of damage there seems to be no particular point in here pursuing the question of the sufficiency of evidence as to issues which may be altogether different at that time.

The judgment is reversed.

Desmond, P. J., and Wood, J., concurred.