369 P.2d 906

Victor P. PALERMO and Rose Palermo, hus-
band and wife, Mable M. Ross, and P & F
Investment Company, an Arizona Corpora-
tion, Appellants,

v.

Billy ALLEN et al., Appellees.

No. 6810.

Supreme Court of Arizona.

En Banc.

March 14, 1962.

Patricia Scott, Tucson, for appellants.

Wright, Goddard & Barry, Charles E. Ares and Paul G. Rees, Jr., Tucson, for appellees.

JENNINGS, Justice.

Plaintiffs-appellants, hereinafter called "Plaintiffs", commenced this action for declaratory judgment and to quiet title in certain real property against the claim of an interest therein by defendants-appellees, hereinafter called "Defendants", based on deed restrictions. Trial was had to the Pima County Superior Court, sitting without a jury. Judgment was entered against the plaintiffs on their complaint and in favor of all the answering defendants for their costs. From the judgment this appeal has been taken.

Helena J. Cowperthwait was the owner of two tracts of land in Pima County, Arizona, the one being bounded on the east by Swan Road and on the south by Grant Road, consisting of about 120 acres known as tract #1, the other being bounded on the east by Swan Road and on the north by Grant Road, consisting of 20 acres known as tract #2. This land was sold to various purchasers over a 19-year period as exhibited by the plat.

On May 28, 1924, Cowperthwait executed a deed to Richard C. MacTavish conveying a parcel of tract #1 consisting of 30 acres. The deed contained no restrictions on the use of the property conveyed.

On November 27, 1929, she executed a deed to Gilbert Duncan conveying a parcel of tract #2 consisting of about 10 acres. The deed contained the following restrictive clause:

"This deed is made subject to the following covenants, restrictions, and conditions, all of which shall run with the land, be binding upon the party of the second part herein, his heirs, executors, administrators and assigns, and shall be and remain in full force and effect until January 1, 1980 * * * to wit:

" * * * said property shall be used only for residence purposes; * * * [description of uses prohibited]

"In the event of the failure of the party of the second part herein, his heirs, executors, administrators or assigns to comply with and keep each and all of said covenants, restrictions and conditions, the said above described

property shall upon failure revert to and become the property of the parties of the first part herein * * * as and for liquidated damages of such failure."

September 15, 1937, Cowperthwait and Duncan entered into an agreement modifying the restrictive covenant in the Duncan deed to permit the taking of paying guests or the conducting of a private school. She further agreed in the same instrument that in any conveyance made of the 10-acre tract directly north across Grant Road from and facing Duncan's property she would incorporate substantially the same restrictions as were contained in the deed to Duncan.

On September 18, 1937, she executed a deed to Camille G. Gay conveying approximately 20 acres (10 of which were directly across from Duncan) in tract #1. The deed contained restrictions which were substantially the same as in the Duncan deed although the words used were not identical. The Gay deed also contained a reversionary clause.

On August 20, 1940, Cowperthwait conveyed approximately 10 acres in tract #2 to Thomas F. Griffin. The deed contained the following restrictions which are the subject of this appeal, to wit:

"Subject, further, to the following restrictions:

"(1) Said property shall be used only for residence purposes * * *.

[description of uses prohibited]

"(7) All of the foregoing covenants, restrictions and conditions shall be and remain in full force and effect until January 1, 1980, * * *."

On August 12, 1941, she conveyed approximately 10 acres in tract #1 to O. J. Farness, the deed containing the following restrictive clause:

"This deed is made subject, also, to the following covenants, restrictions, and conditions, all of which shall run with the land and be binding upon the parties of the second part hereto, their heirs, executors, administrators, and assigns:

"Said property shall be used only for residence purposes * * *.

[description of uses prohibited]

"All of the foregoing covenants, restrictions and conditions shall be and remain in full force and effect until January 1, 1980 * * *."

On April 14, 1943, she conveyed a parcel of land in tract #1 to C. M. Nielsen. The deed contained restrictions on the use of the property conveyed as follows:

"This conveyance is made subject to the following restrictions and conditions: * * *

"Said property shall be used only for residence purposes * * *.

[description of uses prohibited]

"All of the foregoing covenants, restrictions and conditions shall be and remain in full force and effect until January 1, 1980 * * *."

Thereafter, Cowperthwait no longer owned any land in the area. During the time Cowperthwait owned the land it was not laid out in lots and blocks; no streets were dedicated; no subdivision plat, map or declaration of restrictions was recorded. However, the various parcels conveyed were later developed and platted by the grantees with comprehensive building restrictions.

After the death of Helena J. Cowperthwait and her husband, their sole heir and distributee, by instrument dated August 31, 1955, released and waived all reversionary rights and estate under the deeds to Duncan and Gay, both of which contained reversionary clauses. The heir was joined as a defendant in this action but is not a party to the appeal.

The plaintiffs are subgrantees of portions of the Griffin tract through mesne conveyances. Their property was either not covered by the subsequent restrictions placed upon the Griffin tract or were expressly excluded. In October, 1957, they filed suit against all persons having an interest in the various tracts conveyed with restrictions by Cowperthwait.

The area had been greatly subdivided since the original conveyances and the defendants in the action numbered 308. One hundred and twenty three defendants made an appearance and contested. The answering defendants include some subgrantees under each of the original grantees and the Farnesses, one of the original grantees. They seek to enforce the restrictions in the deed to the plaintiffs' predecessor in title (Griffin) basing their claim solely on their ownership of land acquired under the common grantor (Cowperthwait). The persons holding title under the MacTavishes (whose deed contained no restrictions) were not made parties to the suit.

The plaintiffs alleged that the defendants claimed an interest in plaintiffs' land by reason of the restrictions in the deed from Cowperthwait to Griffin; that said restrictions were merely personal covenants, and asked the court for a declaratory judgment and a decree quieting title in the plaintiffs and enjoining the defendants, or any of them, from claiming any right to enforce restrictions as against the plaintiffs.

The defendants admitted the facts, denied the plaintiffs' contention that the restrictions were merely personal covenants, and alleged that all the conveyances from Cowperthwait were made and the re-

strictions included therein in the execution of a general scheme or plan for the improvement of the entire district comprising the real property described in said conveyances. Defendants further alleged that the restrictions and covenants contained in the Griffin deed were intended to and did and do run with the land for the benefit of all the present owners of the lands described in the conveyances.

At the trial, plaintiffs' evidence consisted solely of the introduction of a map, the various deeds from Cowperthwait, the Duncan agreement modifying the original restrictive clause contained in Duncan's deed, and the subsequent declarations of restrictions pertaining to the various subdivisions. It was their contention that the entire case rested on construction of the deeds and that a proper interpretation of the language of said deeds and the proper application of the law thereto would determine the issue here presented, since the only serious subject of controversy is the proper interpretation of the building restrictions contained in the deed from Cowperthwait to Griffin.

The plaintiffs assigned as error the trial court's granting of judgment for the answering defendants since there was no evidence that the restrictions in the Cowperthwait deed were intended to inure to the benefit of persons other than the original grantor (Cowperthwait) and the granting of judgment for those of the answering defendants who hold title under Griffin because Griffin is the common ancestor in title of those defendants and of the plaintiffs, and that the doctrine of merger of dominant and servient tenements applies.

The question on this appeal is whether the restrictions imposed by Cowperthwait in the various conveyances were intended to run with the land, or were mere personal restrictions between herself and her purchasers.

 The courts are continuously being called upon to determine the problems arising from the imposition of restrictive covenants. Due to the wide divergence of opinion and conflicting results, each case must depend primarily upon its own particular facts.[1]

---

1. This court stated in O'Malley v. Central Methodist Church, 67 Ariz. 245, 250, 194 P.2d 444, 448 (1948):
 "There has been much judicial writing upon the subject of restrictive covenants, and, as may be anticipated from the very nature of the topic, the cases abound in fine and subtle distinctions. Many of the decisions upon this branch of the law appear to be in hopeless conflict, but are usually reconcilable when the facts in each case are fully understood. In fact the courts seem to have no special difficulty in ascertaining and declaring the controlling general principles of law, but in their application to concrete facts it may well be said that the decisions are in hopeless conflict and confusion, and individual cases as precedents are not of much value, except as general principles are recognized and declared."

Restrictive covenants which equity enforces between purchasers inter sese are those that have been imposed by a common vendor or the original owner of a tract of land in pursuance of a general plan for the development and improvement of the property. McRae v. Lois Grunow Memorial Clinic, 40 Ariz. 496, 14 P.2d 478 (1932); Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132 (1931); Club Manor, Inc. v. Oheb Shalom Congregation, 211 Md. 465, 128 A.2d 405 (1957). An action is not maintainable between purchasers not parties to the original covenant where it does not appear that the covenant was entered into to carry out some general scheme or plan for the improvement or development of the property, or it does not appear that the covenant was entered into for the benefit of the land, or it appears that the covenant was not entered into for the benefit of subsequent purchasers, but only for the benefit of the original covenantee. Club Manor, Inc. v. Oheb Shalom Congregation, supra. See also Thompson on Real Property, Vol. 7, p. 92, § 3607.

This is not a case where the original owner of a tract has platted the land, laying it out into building lots, blocks, and streets. There was no definite or designated area established by Cowperthwait. She did not subdivide. No map, plat, or declaration of restrictions was prepared or recorded. There was no promotional effort to sell lots. On the contrary, the various parcels conveyed never consisted of less than 10 acres and the conveyances were made over a period of 19 years.

The defendants, however, contend that Cowperthwait had in mind a definite plan of development for the area, to protect against nonresidential use of the land for a specific period of time, and that all the conveyances from Cowperthwait were made and the restrictions included in said conveyances in the execution of such plan.

In order to create a binding covenant running with the land in a subdivision, and enforceable by any purchaser of property therein, there should be a uniform plan of restrictions applicable to the area as a whole known to each purchaser and thereby, by reference or implication, forming a part of his contract with the subdivider. Murphy v. Marino, La.App., 60 So.2d 128 (1952).

If a general scheme or plan of development came into being as claimed by the defendants, then there must have been the joint intent of Cowperthwait and her grantees to that effect. O'Malley v. Central Methodist Church, 67 Ariz. 245, 194 P.2d 444 (1948); Pierson v. Canfield, Tex.Civ.App., 272 S.W. 231 (1925). For as was said in McBride v. Freeman, 191 Cal. 152, 158, 215 P. 678, 681 (1923):

"It takes two to make a contract. There must be a meeting of the minds

of both parties thereto. The mere fact that the vendor in the exaction of uniform building restrictions had in his own mind a general plan or scheme of improvement falls short of establishing even his own intention that such restrictions shall be for the benefit of any one other than himself, and much less does it establish such a meeting of minds between him and his grantee as is necessary to create a contract. Given such intention in the mind of the grantor, there must have co-existed a like intention in the mind of his grantee * * *."

Thus, it is not only necessary to prove what the intention and purpose of Cowperthwait was in inserting the restrictions in the deeds to her various grantees but it is also necessary to show that the grantees, accepting the deeds, knew that such was the intent and purpose.

█ Assuming that Cowperthwait did have in mind a plan of development for the area in inserting restrictive covenants in the various deeds, there is no evidence that such intent or purpose was ever conveyed to the plaintiffs' predecessor in title or to any purchaser of any of the lots. Nor does the evidence show that the grantees, when they accepted the deeds, knew that such was the intention and purpose of Cowperthwait or, if known by them, that they acquiesced therein. The subsequent filing

of comprehensive building restrictions by the various grantees covering the area within their conveyances tends to negative such fact.

The defendants contend that an analysis of the actual restrictions, supported by oral and documentary evidence introduced at the trial, makes it clear that the covenants were inserted into the various deeds pursuant to a general plan, and therefore were for the benefit of the land rather than for mere personal benefit of Cowperthwait. They set forth the following to substantiate their contention:

(1) That the sale to Duncan by Cowperthwait in 1929 set the tone of the restrictions and that the pattern was substantially followed in the subsequent sales.

(2) That the homestead was sold before the sale to Griffin and that if these covenants were personal to Cowperthwait there would have been no further motive to include them in the Griffin, Farness, and Nielsen deeds.

(3) That Cowperthwait considered it necessary to obtain from Duncan a modification of the business restrictions in his deed before conveying to the Gays who were purchasing with the intention of using the property as a guest ranch, and that there was a further agreement to put all the restrictions in Duncan's deed into the subsequent deed to Gay.

(4) That the Farnesses insisted upon property with restrictions and discussed 'restriction' protections with each of the Cowperthwait grantees.

(5) That the deeds to the property owned by plaintiffs specifically recite they are subject to the Griffin restrictions.

It is not enough even if it is admitted that Cowperthwait had a general plan or scheme in mind, for a mere intent on the part of the grantor to establish a general scheme does not govern. O'Malley v. Central Methodist Church, supra; Werner v. Graham, 181 Cal. 174, 183 P. 945 (1919). The intent must be mutual, and is to be ascertained from the language of the deeds, construed in connection with the circumstances existing at the time.

In the Werner case, supra, the facts were similar to the case at bar in that there was no reference in the deeds to any general plan or mention of the fact that the restrictions were meant to inure to the benefit of the other lot owners. The court held that without the deeds having so recited, the various lot owners were not entitled to enforce the covenants as against each other under the theory of a general plan. The court stated that undoubtedly the grantor had had a general scheme in mind but that fact was irrelevant in view of the failure of the deeds to recite the intention, saying, "Any understanding not incorporated in them is wholly immaterial in the absence of a reformation". The court concluded saying:

"This whole discussion may in fact be summed up in the single statement that, if the parties desire to create mutual rights in real property of the character of those claimed here, they must say so, and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them, which constitute the final expression of their understanding. * * *" 181 Cal. at 185, 183 P. at 949.

In the O'Malley case the court found no general plan existed and therefore held the restrictions unenforceable by the lot holders against each other. The court laid great stress upon the fact that none of the deeds contained an express covenant on the part of the grantor to incorporate identical or similar restrictions in all deeds to the subdivisions referred to.

■ The deeds to Cowperthwait's various grantees made no reference to any general plan and failed to state what property was to be bound by the restrictive covenants or for whose benefit such restrictions were imposed. Nor did the deeds contain any express covenant on the part of Cowperthwait to incorporate identical restrictions in all deeds of conveyance by her. The mere fact that the grantor in selling several lots imposed restrictions in

the conveyance which, it was expected, would benefit the premises which were subjected to them, is not sufficient to establish a general scheme or plan which will create an equitable easement. Webber v. Landrigan, 215 Mass. 221, 102 N.E. 460 (1913).

The fact that Cowperthwait sold the homestead before the sale to Griffin would not be sufficient evidence to sustain the defendant's contention that these covenants were not personal to Cowperthwait or there would have been no further motive to include them in the Griffin, Farness, and Nielsen deeds. This would not be determinative of whether the restrictive covenants were personal to Cowperthwait or were to run with the land, since Cowperthwait at the time of the sale of the homestead still owned the greater portion of the two tracts of land.

That Cowperthwait considered it necessary to obtain from Duncan a modification of the business restrictions in the Duncan deed before conveying to the Gays who were purchasing with the intention of using the property as a guest ranch does not aid the defendants in establishing the fact that the restrictive covenants were to run with the land and hence were not personal covenants. The defendants contend that this was evidence of the intent on the part of Cowperthwait to keep the land she sold on a uniformly restricted residential basis. The grantor's retaining the right to release

or modify the restrictions is an indication of the lack of a general plan. Maples v. Horton, 239 N.C. 394, 80 S.E.2d 38 (1954); Rose v. Jasima Realty Corporation, 218 App.Div. 646, 219 N.Y.S. 222 (1926).

It was stated in Rose v. Jasima Realty Corporation, supra, wherein the grantor had retained the right to modify the restrictive covenant:

> "* * * This is consistent with but one assumption; i. e., that the covenant was not for the benefit of other grantees, but for the grantor's benefit only. A covenant which the grantor may cancel at will cannot be for the benefit of any one but him." 218 App.Div. at 650, 219 N.Y.S. at 226.

The Duncan agreement shows Cowperthwait had power to modify the restrictive covenants. Such fact is evidence of the lack of a general plan and that the covenant was for her own benefit.

Defendants also contend that the Duncan agreement whereby it was agreed to put all the restrictions into the subsequent deed to Gay is extremely strong evidence that Cowperthwait intended to keep the land she sold on a uniformly restricted residential basis. However, neither the Duncan nor the Gay deed made reference to a general scheme of improvement or in any way indicated that the benefit of the restrictions was meant to inure to other land.

■ That the Farnesses discussed restriction protections with each of the Cowperthwait grantees is not evidence that the restrictive clauses in the various deeds were to run with the land since a deed must be construed as of the time it is given, not as of a later date. Martin v. Ray, 76 Cal.App.2d 471, 173 P.2d 573 (1946).

The fact that a grantee accepts a deed containing restrictions does not justify an inference that he thereby agrees that the restrictions shall constitute a covenant between himself and adjoining land owners. O'Malley v. Central Methodist Church, supra. Nor does the fact that the deeds to plaintiffs specifically recite that they are subject to restrictions control, for this Court stated in Smith v. Second Church of Christ, Scientist, Phoenix, 87 Ariz. 400, 407, 351 P.2d 1104, 1109 (1960) that:

> " * * * The mere recital of the restriction in the later deeds could not have the effect of enlarging the original obligations of the covenant, whatever they were. * * *"

■ If the purpose of a grantor in inserting a restrictive covenant in a deed is not stated, such purpose must be proven before the grantor, or anyone claiming under him, can claim the benefit of the restriction. Thompson on Real Property, Vol. 7, p. 94, §.3608. In determining whether land is included in a building scheme doubts are to be resolved in favor of the free use and enjoyment of the property and against restrictions. Scholtes v. McColgan, 184 Md. 480, 41 A.2d 479 (1945); Werner v. Graham, supra. Restrictive covenants are presumed to be for the benefit of the grantor alone in the absence of evidence to the contrary, and the burden of showing that such covenant runs with, or is appurtenant to the land is on the party claiming the benefit of the restriction. Rowe v. May, 44 N.M. 264, 101 P.2d 391 (1940); Lovell v. Columbian Nat. Life Ins. Co., 294 Mass. 473, 2 N.E.2d 545 (1936). Defendants contend that the rule does not apply when, as here, that party is the defendant in a declaratory judgment action rather than the plaintiff in a suit for injunction. However, the burden of proof is not imposed according to priority in taking legal steps to determine an issue. Travelers Ins. Co. v. Greenough, 88 N.H. 391, 190 A. 129, 109 A.L.R. 1096 (1937). The Declaratory Judgment Act discloses no purpose to shift the burden upon a party merely because he avails himself of the Act. Travelers Ins. Co. v. Greenough, supra.

That each deed consisted of a private transaction between Cowperthwait and each of her purchasers without any reference to restrictions imposed upon the tracts as a whole strongly indicates that the restrictions were entirely personal as between Cowperthwait and each of her individual grantees.

That the restrictions in the various Cowperthwait deeds are not uniform is apparent

from a reading of the instruments. The first deed contained no restrictive covenant. Two of the deeds contained reversionary clauses while in the others no method of enforcement of the restrictions was mentioned therein. Two deeds stated the restrictions ran with the land while the others failed to so state.

Assuming for the sake of argument, however, that the provisions therein are substantially the same, such fact, of itself, is insufficient to confer the right to enforce the restrictions on the various grantees. The law is well settled that the mere adoption by a common grantor of the custom of exacting the same restrictions in the deeds to all portions of the tract is not sufficient evidence that the covenant was entered into for the benefit of all those portions. For, as was stated in Pierson v. Canfield, supra:

"The fact that these deeds contained identical restrictions would not, * * * be sufficient of itself to establish the existence of a general scheme, or that the restrictions in the deed under which appellant claims were intended for the benefit of any other lot, or lots, conveyed by the common grantor. * *" 272 S.W. at 233.

The intention of both parties to a particular deed must have been to impose equitable servitudes. O'Malley v. Central Methodist Church, supra. That the grantor may have had such an intention may possibly be implied from his insertion of restrictions in all deeds, but the intention of the grantee who was not a party to the deeds to other parcels, obviously may not be so implied. Pierson v. Canfield, supra.

The intention of the parties should be determined by a fair interpretation of the grant or reservation creating the easement. As was said in Berryman v. Hotel Savoy Co., 160 Cal. 559, 566, 117 P. 677, 679, 37 L.R.A.,N.S., 5 (1911):

"* * * It seems to us that in all these cases it is better to get at the intention * * * from the language of the deed, interpreted in the light of the attending circumstances, than to conjecture the intent from the circumstances, and then to make the language of the deed bend to that."

The plaintiffs herein all derived title from Griffin. Therefore, the terms of the Griffin deed must be examined to determine the extent to which the plaintiffs owe an obligation to other landowners in the tracts.

The restriction is in the most general terms, and no words are used which indicate the object of either party in inserting it in the deed. It does not purport to bind

the grantee, his heirs and assigns, or to run in favor of the grantor, her heirs and assigns. There is no description of any other land which might be the dominant tenement. There is no statement that the covenant is meant to inure to the benefit of other land. There is no mention of who may enforce the restrictions. No method of enforcement or penalty is provided, not even a reversionary clause as in the Duncan and Gay deeds. There is no reference to any general plan or scheme of improvement pertaining to the whole area. There is no statement that the restrictions are intended to "run with the land". There is no covenant by the grantor to insert similar restrictions in deeds to subsequent lands later to be conveyed by her. There is a complete lack of language indicating that the restrictions were meant to inure to the benefit of anyone other than the grantor, personally.

■ Equitable servitudes in favor of one parcel and against another cannot be created in any such uncertain and indefinite fashion. If the parties desire to create mutual rights in real property, they must say so in the written instrument exchanged between them. Werner v. Graham, supra; Martin v. Ray, supra; Sailer v. Podolski, 82 N.J.Eq. 459, 88 A. 967 (1913).

As was said in Badger v. Boardman, 82 Mass. 559, 560, 16 Gray 559, 560 (1860), an injunction suit:

"The infirmity of the plaintiff's case is that there is nothing from which the court can infer that the restriction in the deed from * * * [the original grantor to defendant] was inserted for the benefit of the estate now owned by the plaintiff. * * * For aught that appears, it might have been intended by the parties for the benefit of the grantor only so long as he remained the owner of any of the land of which that conveyed to the plaintiff originally formed a part. * * *"

And in Sailer v. Podolski, supra:

" * * * The covenants contained in the deed * * * from the common grantors to defendant's predecessor in title are solely covenants of the grantee; grantors neither bind themselves to enforce or perpetuate the covenants against their grantee and his assigns, nor to create or enforce similar * * * covenants against subsequent purchasers of other parts of their land, nor do the covenants in any way state that they are for the benefit of subsequent purchasers of all or any part of the unsold lots of grantors. The covenants are in form purely personal covenants of the grantee to his grantors * * *."

" * * * where there is no such general scheme, and where neither the instrument containing the covenant nor

any other instrument provides that similar covenants shall be inserted in subsequent deeds to be made by the grantor of his remaining land, nor in any other way restricts the grantor in the use or disposition of his remaining land, nor provides that the covenant is for the benefit of subsequent purchasers * * * it may well be doubted whether any satisfactory ground can be found to support a claim of right of a subsequent purchaser from the grantor to enforce the covenant. * * * to sustain such a claim of right there must be read into the written contract by way of construction from the light of surrounding circumstances an engagement or stipulation or purpose which the parties to the contract did not express. It seems at least clear, upon principles which scarcely need be stated, that the subsequent conduct of the grantor in inserting a similar covenant in a subsequent conveyance of a part of the tract cannot be properly regarded as a circumstance in aid of the intention or purpose of the parties to the prior deed. * * *" 82 N.J.Eq. at 463, 464, 88 A. at 968, 969.

Nor do the circumstances existing at the time of the execution of the Griffin deed contribute to an enlargement of its effect. Prior to execution Cowperthwait had conveyed the MacTavish land without restrictions; conveyed the Duncan land with restrictions reciting that in the event of their breach the property conveyed would revert to the grantors, their heirs, or assigns; agreed with Duncan that the restrictions be modified and had promised to insert restrictions similar to those contained in his deed (as modified) in her conveyance of the ten-acre parcel directly across Grant Road from Duncan; conveyed that particular ten-acre parcel with the agreed restrictions (and with a reversionary clause) together with another ten-acre parcel conveyed by the same deed with same, but not all, the same restrictions. Neither the Duncan deed nor the Gay deed made reference to a general scheme of improvement or in anyway indicated that the benefit of the restrictions was meant to inure to other land. In none of the instruments had Cowperthwait bound herself to insert similar restrictions in conveyances of her remaining land, except as to the ten acres directly across from Duncan.

The intention was never expressed in writing by Cowperthwait as to what her purpose was in placing the restrictions in the various conveyances. It cannot be said that it was done under a general plan.

In Kiley v. Hall, 96 Ohio St. 374, 117 N.E. 359, L.R.A. 1918B, 961 (1917), the original grantor recorded the plat laying out a subdivision. All deeds contained identical restrictions. The court held that the restric-

tions were not enforceable between the various grantees inter sese, saying:

"* * * In inserting these restrictions in the deeds, Kyle, no doubt, had in his own mind * * * a general plan or scheme of improvement for these lots. It is also manifest, from the fact that he retained none of the property, that this general plan was intended by him to be for the benefit of his grantees, and not for himself. But can it be said that such plan came to the notice of his grantees when they purchased their lots, or that they purchased them with reference thereto? If the plan had been noted upon the recorded plat, notice thereof would be imputed to each lot purchaser. It would be a part of his chain of title. And, again, Kyle, * * in his deeds did not advise a purchaser of a general plan, and did not covenant that all sales of lots * * * should be made subject to like restrictions, * * nor did each purchaser covenant * * as well for the use of every other person who might become the owner of a lot in the allotment * * * that he would observe the restrictions * * *.

* * * * * * *

"These restrictions, so far as a purchaser knew or was bound to know, may have been inserted in his deed alone, and were not intended to apply to any other lot * * *; for we know of no rule of law that charges one lot owner with constructive notice of a covenant contained in a deed not in his chain of title. Each purchaser * * * knew that his grantor * * * could enforce the * * * restrictions; but we do not know upon what theory the covenant in his deed would advise him that he owed a similar duty to the other lot owners. * * *" 96 Ohio St. at 380, 381, 117 N.E. at 360, 361.

The evidence does not show that Cowperthwait impressed the deed to Griffin with restrictions "for the benefit of all other property in the neighborhood". It was not so expressed in the deed, there was no general restrictions adopted by the grantor referred to in the deed, there was no master plat in evidence which may have shown a general or neighborhood plan. Certainly there was no writing "clearly expressing" that the restrictions were for the benefit "of all other property in the neighborhood" and we cannot say that such intention was shown by "plain and unmistakable implication".

Construing the evidence in the light most favorable to defendants, the record does not justify the conclusion of the trial court that the common grantor, Cowperthwait, imposed the restrictions in question in pursuance of a general plan for the development and improvement of all lots included within the tracts.

Nor is there sufficient evidence to justify the contention that the restrictions were placed upon the plaintiffs' property with the intent to benefit the land retained by Cowperthwait, thereby enabling subsequent grantees to enforce such restrictions. The considerations which stand in the way of drawing the inference that there was a general plan intended to establish restrictions for the benefit of purchasers of lots generally seem also to stand in the way of drawing an inference that the restrictions in the Griffin deed were intended for the benefit of the land retained by the Cowperthwaits.

Since the evidence failed to establish any covenant which would create any right or liability that would pass to the defendants the restrictions were purely personal to Cowperthwait.

Having found the restrictive covenants contained within the various Cowperthwait deeds to be personal covenants, it is unnecessary to consider plaintiffs' second assignment of error.

For the reasons indicated above judgment is reversed and the case remanded with directions that judgment be entered for the plaintiffs.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concurring.