596 P.2d 712

COLONIA VERDE HOMEOWNERS ASSOCIATION, a corporation, Plaintiff/Appellee,

v.

Charles W. KAUFMAN and Colleen V. Kaufman, husband and wife, Defendants/Appellants.

No. 2 CA–CIV 2974.

Court of Appeals of Arizona, Division 2.

April 11, 1979.

Rehearing Denied May 31, 1979.

Review Denied June 26, 1979.

Fish, Briney, Duffield, Miller, Young & Adamson, P. C., by Richard Duffield, Tucson, for plaintiff/appellee.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P. C., by Michael J. Meehan, and O'Meara, Michela & Weber by Gerard R. O'Meara, Tucson, for defendants/appellants.

## OPINION

RICHMOND, Chief Judge.

This action was brought by the Colonia Verde Homeowners Association to enforce the provisions of a declaration of establishment of covenants, conditions and restrictions, and for a determination of the rights of the parties regarding the maintenance and removal of trees on property owned by the association. Appellants are owners of a residence in Colonia Verde subdivision. The case was tried to the court and the relief requested by the association was granted. The court expressly found that the two parcels of real estate owned by appellants upon which their residence was located were both subject to the declaration, that appellants were in violation of the declaration in that four trees located on their property interfered with and obstructed the view of their neighbors, and that the real property owned by the association in lot 17 of the subdivision was common property under the terms of the declaration.

The court ordered appellants to remove two eucalyptus trees at their own expense or to authorize the association to remove the trees and to reimburse it for the reason-

able cost, and that two other trees be trimmed or pruned to the satisfaction of the association so as not to interfere with the view. The court further declared that the association as the owner of the common property adjacent to appellants' property had full authority over and control of the vegetation on the common property, including but not limited to its maintenance and removal. We affirm.

Colonia Verde is a subdivision developed in Pima County in the late 1960s and through the 1970s. All of the property, lots 1 through 18, was placed in trust with Arizona Title Insurance and Trust Company. The declaration of covenants and restrictions for lots 1 through 12, also setting forth the duties and powers of the association, was recorded in April, 1968. A recorded plat including appellants' property (lot 17, site 2) was filed May 20, 1969, and refers to the declaration recorded in 1968. The portion of the subdivision in which appellants' property is located was planned so that the site boundaries for each residence were determined by surveying the improvement after construction, conveying the improved portion of the lot to the owner, and leaving the remaining portion as common property. According to the developer, this concept was unique.

In order to apply the declaration to lots 13 through 17, a supplementary declaration was executed and recorded on May 20, 1969. The property to be covered by the later declaration, however, was described as that set forth in "Exhibit A" and the exhibit was omitted from the recording. After discovering this deficiency the trustee on February 20, 1973, recorded an affidavit reciting that the exhibit which described lots 13 through 17 inclusive was attached to the supplementary declaration when it was executed but for reasons unknown did not become a part of the recorded instrument. The affidavit also recited that it was executed and recorded for the purpose of showing of record lots 13 through 17 inclusive as "Exhibit A" of the supplementary declaration.

Appellants acquired the property on which their home is located by two separate conveyances. The primary parcel was acquired by deed recorded on April 24, 1972, and a small adjacent parcel by deed dated November 16, 1973. Both deeds were joint tenancy deeds, formally accepted by appellants, and recited that the conveyed property was subject to all restrictions and covenants of record in the office of the Pima County Recorder. The common property remaining after conveyances of title to the residences constructed on lots 13 through 17 was conveyed to the association by a deed dated May 2, 1974, and recorded August 14, 1974.

Appellants' position below and on appeal is that their property was not subject to the restrictive covenants because at the time they acquired the primary parcel there were no recorded restrictions that applied to the property.

Restrictive covenants which equity enforces among purchasers are those that have been imposed by a common vendor or the original owner of a tract of land in pursuance of a general plan for the development and improvement of the property. *Palermo v. Allen*, 91 Ariz. 57, 369 P.2d 906 (1962). The grantor's intent alone, however, is not sufficient to create mutually enforceable covenants between the various grantees. It is the mutual intent of both grantor and grantee that is important. *R & R Realty Co. v. Weinstein*, 4 Ariz.App. 517, 422 P.2d 148 (1966).

Appellants' contract for the construction of their residence acknowledged receipt of a copy of the declaration of restrictions and covenants. At the time they acquired title to their property they had actual knowledge of the existence of the restrictive covenants. The certificate of dedication in the recorded plat explicitly referred to the restrictive covenants. From the time appellants became members of the association they considered themselves and the other homeowners bound by the restrictions. They sought and obtained approval for improvements to their property as required by the declaration. They insisted that the as-

sociation enforce provisions as to other property owners. Most important to our decision, prior to this lawsuit they successfully maintained an action to enforce one of the provisions as to another property owner in lot 17 who had also acquired title prior to the recording in 1973 of the affidavit.

■ If a general plan has been maintained from its inception, has been understood, relied on, and acted upon by all in interest, it is binding and enforceable on all among themselves. *Hayes v. Gibbs*, 110 Utah 54, 169 P.2d 781 (1946); *see also Grange v. Korff*, 248 Iowa 118, 79 N.W.2d 743 (1956). The Arizona cases relied on by appellants are distinguishable on their facts. In *Smith v. Second Church of Christ, Scientist, Phoenix*, 87 Ariz. 400, 351 P.2d 1104 (1960), the court expressly found that the lot in question was not part of a common neighborhood plan. In *Palermo v. Allen*, supra, there was no showing that the intention to establish such a plan was ever conveyed to any lot purchaser. In *O'Malley v. Central Methodist Church*, 67 Ariz. 245, 194 P.2d 444 (1948), the court found no general plan existed.

■ Here, the recorded plat of lots 13 through 17, makes specific reference to the declaration of covenants and restrictions applicable to Colonia Verde subdivision, dated April 8, 1968, and recorded in a specified docket book. The 1968 declaration recited that the real property described therein by metes and bounds (lots 1 through 12) and such additions as might thereafter be made were subject to the covenants and restrictions, that the declaration established a general plan for the development of the property, and that the covenants were for the benefit of each owner and were intended to run with the land. The declaration thus meets the test set down by *Palermo v. Allen*, supra, for establishing that a general scheme or plan on the part of the original grantor was intended for lots 1 through 12 and subsequent additions. *See Donahoe v. Marston*, 26 Ariz.App. 187, 547 P.2d 39 (1976).

---

1. *Smith v. Second Church of Christ, Scientist, Phoenix*, supra, 87 Ariz. at 411, 351 So.2d 1104.

At the time appellants acquired their primary home site, however, it cannot be said that lots 13 through 17 had been subjected to the covenants and restrictions by the procedure set forth in the declaration: filing of record a supplementary declaration which would "extend the scheme of the covenants and restrictions of this Declaration to such (additional) property." The question thus posed is whether appellants' actual notice of the restrictive covenants is sufficient to overcome that deficiency.

Arizona is committed to the rule of *Werner v. Graham*, 181 Cal. 174, 183 P. 945 (1919), that the intent to impose mutually enforceable servitudes under a general development plan must be ascertained from the language of the deeds:

This whole discussion may in fact be summed up in the single statement that, if the parties desire to create mutual rights in real property of the character of those claimed here, they must say so, and must say it in the only place where it can be given legal effect, namely, in the written instruments exchanged between them, which constitute the final expression of their understanding. * * * (183 P. at pages 947–949).[1]

In a fact situation not unlike the one before us, the Supreme Court of California in *Riley v. Bear Creek Planning Committee*, 17 Cal.2d 500, 131 Cal.Rptr. 381, 551 P.2d 1213 (1976), recently applied the rule of *Werner v. Graham* despite the grantees' actual knowledge of the unrecorded restrictions:

* * * Where . . . mutually enforceable equitable servitudes are sought to be created outside the recording statutes, the vindication of the expectations of the original grantee, and for that matter succeeding grantees, is hostage not only to the good faith of the grantor, but, even assuming good faith, to the vagaries of proof by extrinsic evidence of actual notice on the part of grantees who thereafter take a part of the servient tene-

---

*But see* dissenting opinion of Justice Struckmeyer.

ment either from the common grantor or as successors in interest to his grantees. * * *, 131 Cal.Rptr. at 389, 551 P.2d at 1221.

In this case, however, the rule does not preclude enforcement of the restrictive covenants against appellants because in our opinion the facts call for application of the doctrine of judicial estoppel. As indicated above, appellants successfully maintained an action to enforce a provision of the declaration. Their sworn complaint in that action alleged *inter alia* that they had purchased their property subject to the declaration; that construction had commenced on the site adjacent to their property; that the plans for such construction had not been approved as required by the declaration, and the construction was not in harmony with Colonia Verde's general plan of development. The complaint thus invoked the enforcement provision of the declaration, and the appellant husband testified that injunctive relief was obtained. The essence of the rule of judicial estoppel is that one who has obtained judicial relief by asserting one position may not subsequently assume an inconsistent position with reference to the same matter in another judicial proceeding. *Mecham v. City of Glendale*, 15 Ariz.App. 402, 489 P.2d 65 (1971); *In Re Estate of Cohen*, 105 Ariz. 337, 464 P.2d 620 (1970); *Standage Ventures, Inc. v. State*, 114 Ariz. 480, 562 P.2d 360 (1977).

The fact that estoppel was not pleaded does not foreclose appellee from raising the issue. The pleading requirement does not apply where no responsive pleading is required and where the estoppel is asserted by a plaintiff to avoid the effect of a defense stated in the defendants' answer. *Robbins Investment Co. v. Green Rose Associates, Inc.*, 8 Ariz.App. 596, 448 P.2d 440 (1968). Once appellants denied that the restrictions applied to their property, appellee could properly raise judicial estoppel.

Appellants' final attack on the judgment is directed to the court's finding that the association is the owner of the property adjacent to theirs and has full authority over and control of the vegetation on such property, including but not limited to its maintenance and removal. There is no question that this property was deeded to the association. Since it does not belong to appellants, any plantings without the approval of the association violated a specific provision of the declaration. Appellants claim this provision is inapplicable because "common properties" are defined as "those areas of land shown on any recorded subdivision plat of the Properties and intended to be devoted to the common use and enjoyment of the Owners of the Properties." The subdivision, however, encompasses only two classes of property—that owned by individual owners and that devoted to their common use and enjoyment. The property deeded to the association falls within the latter category and therefore is under the control of the association.

Judgment affirmed.

HOWARD and HATHAWAY, JJ., concur.