803 P.2d 104

Robert F. FEDEROFF and Kathryn Fed-
eroff, husband and wife; Chris Davis, a
single woman; Karen Knierem; Sandra
Sylvester; Lorne Graham Wilson and
Barbara B. Wilson, husband and wife;
Robert Miller; and Marcia Lincoln,
Plaintiffs/Appellants/Cross–Appellees,

v.

PIONEER TITLE & TRUST COMPANY
OF ARIZONA, an Arizona corporation,
as Trustee under Trust No. 11612; H &
R Associates, a limited partnership;
Lowell E. Rothschild and Ann S. Roths-
child, husband and wife; George T.
Schultz and Linda K. Schultz, husband
and wife; Wayne Terpstra and Tamara
Terpstra, husband and wife; Larry
Duane Casoni and Maryann Casoni,
husband and wife; Joseph A. Buono
and Angela T. Buono, husband and
wife; Sergio Martinez and Irma Y.
Martinez, husband and wife; Kerry R.
Cox and Patricia Cox, husband and
wife; Darryl D. Koeppel and Sandra J.
Koeppel, husband and wife; Robert J.
Casulli and Sandra J. Casulli, husband
and wife; Glenn Griffith and Carol A.
Griffith, husband and wife; Stanley
Murray and Kathleen Murray, husband
and wife; Gregory J. Bennett and
Christine A. Bennett, husband and wife;
Phillip M. Ramirez and Susan M. Ra-
mirez, husband and wife; Tim Gordon
and Jeanette Gordon, husband and
wife; Ronald Ying Yee and Karen R.
Lee Yee, husband and wife; William C.
Stellbrink and Retha Barbara Stell-
brink, husband and wife; Ernst Stell-
brink and Opal H. Stellbrink, husband
and wife; William J. Boxhorn and Lin-
da S. Boxhorn, husband and wife; Mar-
vin Kirk Simmons and Jacquelyn Marie
Simmons, husband and wife; William
Mooney; John Thomas Glaze and Lin-
da Lee Glaze, husband and wife;
Randall B. Terpstra and Pamela K.
Terpstra, husband and wife; Florence
L. Voight and Deitrich Voight, husband
and wife; Jill S. Brooker; Paul J. Gre-
co and Carol L. Greco, husband and
wife; Stephen Dunn and Nancy Dunn,
husband and wife; First American Sav-
ings and Loan; First American Title;
First Gibraltar Mortgage; Pima Sav-
ings and Loan Association; Western
Savings and Loan Association; and
Wolfswinkle Group, Inc., an Arizona
corporation, Defendants/Appel-
lees/Cross–Appellants.

No. CV–90–0232–PR.

Supreme Court of Arizona,
In Division.

Dec. 6, 1990.
Reconsideration Denied Jan. 23, 1991.

Stompoly & Stroud, P.C. by William G. Walker, Tucson, for Robert F. Federoff, Kathryn Federoff, Chris Davis, Karen Knierman, Sandra Sylvester, Lorne Graham Wilson, Barbara B. Wilson, Robert Miller and Marcia Lincoln, plaintiffs/appellants/cross-appellees.

Mesch, Clark & Rothschild, P.C. by J. Emery Barker, Tucson, for Pioneer Title & Trust Co., H & R Associates, Lowell E. Rothschild and Ann S. Rothschild, defendants/appellees/cross-appellants.

Jones, Edwards, Smith & Kofron, P.C. by William W. Edwards, Tucson, for George T. Schultz, Linda K. Schultz, Wayne Terpstra, Tamara Terpstra, Larry Duane Casoni, Maryann Casoni, Joseph A. Buono, Angela T. Buono, Sergio Martinez, Irma Y. Martinez, Kerry R. Cox, Patricia Cox, Darryl D. Koeppel, Sandra J. Koeppel, Robert J. Casulli, Sandra J. Casulli, Glenn Griffith, Carol A. Griffith, Stanley Murray, Kathleen Murray, Gregory J. Bennett, Christine A. Bennett, Phillip M. Ramirez, Susan M. Ramirez, Tim Gordon, Jeanette Gordon, William C. Stellbrink, Retha Barbara Stellbrink, Ernst Stellbrink, Opal H. Stellbrink, William J. Boxhorn, Linda S. Boxhorn, Marvin Kirk Simmons, Jacquelyn Marie Simmons, William Mooney, John Thomas Glaze, Linda Lee Glaze, Randall B. Terpstra, Pamela K. Terpstra, Florence L. Voight, Deitrich Voight, Jill S. Brooker, Paul J. Greco, Carol L. Greco, Stephen Dunn, Nancy Dunn, First American Sav. and Loan, First American Title, First Gibraltar Mortg., Pima Savings and Loan Ass'n, and Western Sav. and Loan Ass'n, defendants/appellees/cross-appellants.

Snell & Wilmer by Michael J. Rusing, Tucson, for Ronald Ying Yee and Karen R. Lee Yee, defendants/appellees/cross-appellants.

Stubbs & Schubart, P.C. by G. Lawrence Schubart, Tucson, for Wolfswinkle Group, Inc., defendant/appellee/cross-appellant.

Molloy, Jones & Donahue, P.C. by David A. McEvoy, Tucson, for Stewart Title Guar. Co., amicus curiae.

Fennemore Craig by George T. Cole, Timothy Berg, Janice Procter–Murphy, Phoenix, for Home Builders Ass'n of Central Arizona and Stewart Title & Trust of Phoenix, Inc., amici curiae.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Stephen E. Renneckar, Tucson, for Southern Arizona Home Builders Ass'n, amicus curiae.

## OPINION

GORDON, Chief Justice.

Robert F. Federoff and others (appellants) petitioned for review of the court of appeals' decision finding eight restrictive covenants unenforceable. We granted review on two issues: (1) whether these restrictive covenants established by the original grantors are enforceable as class three covenants under *O'Malley v. Central Methodist Church*, 67 Ariz. 245, 194 P.2d 444 (1948); and (2) whether enforcement of the covenants, regardless of their classification under *O'Malley*, is precluded by *Werner v. Graham*, 181 Cal. 174, 183 P. 945 (1919), because the failure to incorporate the recorded covenants into the deeds of the subsequent grantees made the covenants personal to the original grantors. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24. We granted review pursuant to Ariz.R.Civ. App.P. 23, 17B A.R.S.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 1947, two adjoining landowners, Charles Logan and Beulah Kingstrand, entered into and recorded in the Pima County Recorder's Office a document creating certain restrictions, conditions, and reservations on their land. The property consisted of two contiguous pieces totalling 800 acres near what is now Ina and Silverbell roads in Tucson. Logan owned 785 acres and Kingstrand owned fifteen acres. The agreement contained eight paragraphs restricting the use of the property. These restrictions included, among other things, a paragraph restricting residential lots to a minimum size of three acres, a paragraph prohibiting the construction of any commercial, industrial, or professional building, and a paragraph establishing the set-back requirements.

Paragraph nine of the agreement stated:

*The above restrictions, reservations, and conditions shall run with the land and continue and remain in force at all times, and against all persons* until August 1, 1951, at which time they shall be automatically extended for a period of five years, and thereafter in successive five year periods unless on or before the end of one of such extension periods the owners of all of the property covered by this agreement shall, by written instrument, duly recorded, declare a termination of the same.... (Emphasis added).

Paragraph ten provided a right of reversion upon violation of the agreement, and continued:

[A]s to each tract owner in said property the said provisions, conditions, and covenants shall be a covenant running with the land, and the breach thereof or the continuance of any such breach may be enjoined, abated or remedied by appropriate proceedings by the owner of the reversionary rights *or by any such owner of other lots or parcels subject to this agreement but by no other person.* (Emphasis added).

In 1950, a corrective amendment to the restriction was recorded in the Pima County Recorder's Office. Logan had sold 4.5 acres to Rex and Alice McBarnes. The McBarneses joined with Logan and Beulah Kingstrand (then Beulah Killoran) to execute an "Amendment to Restrictions Agreement" that slightly altered para-

graphs four and six, relating to residential lots and buildings.

Between 1978 and 1980, H & R Associates and Lowell Rothschild (appellees) purchased a portion of the acreage covered by the agreement. In 1980, they obtained a rezoning from SR (3.3 acre lots) to CR–1 (one acre lots). In March 1985, the developer, H & R Associates, commenced work on the property to obtain subdivision approval from the Department of Real Estate, which approved a thirty-one lot subdivision in October 1985.

Appellants filed this action in October 1986. They owned land within the area covered by the original Logan–Kingstrand agreement and sought an injunction prohibiting violation of the restrictive covenants. The evidence at trial showed that appellees had notice of the recorded covenants not only by virtue of the constructive notice arising when a document is recorded, but also by express references in the preliminary title report and subdivision report. Neither the general partner of H & R Associates nor Rothschild consulted the recorded covenants. Limited evidence was presented on the chain of title by which appellees obtained their interests, but apparently none of the deeds that conveyed the lands from Logan and Kingstrand or the McBarneses downward to appellees contained any reference to the recorded restrictive covenants.

At the time of trial, H & R Associates had sold twenty-six of the thirty-one lots in the subdivision. Six lot owners had built houses by the time they were served. All but two of the sixteen owners who testified at trial admitted they had reviewed the subdivision report before buying their lots.

At trial, appellees concentrated on the issues of economic feasibility and changed circumstances. On December 4, 1987, the court issued a minute entry, ruling:

> The Court finds that enforcement of the covenants would effectively deny economically viable use of the defendants' land. The imposition of numerous governmental regulations on land use since the date of the covenants is a change in conditions which makes use of the defendants' property uneconomical if the covenants are enforced.

> But for the foregoing, the Court would find the restrictions to be valid and binding upon the defendants, and that plaintiffs would be entitled to enforce them by injunction.

The court entered judgment, declaring only paragraph four (minimum residential lot sizes) of the restrictions void and unenforceable.

Appellants appealed the ruling that paragraph four was unenforceable. Appellees cross-appealed, arguing that all of the restrictions were unenforceable and objecting to the trial court's denial of damages sustained while a preliminary injunction on further development was in effect.

The court of appeals reversed the trial court's decision that paragraph four was unenforceable because of the economic impact of the restrictions. It then invalidated the rest of the restrictions, finding that they were personal between Logan and Kingstrand and, therefore, gave no enforcement rights to subsequent grantees. It remanded the case for the trial court to reconsider the issue of appellees' damages during the preliminary injunction period. The court also awarded appellees attorney's fees on appeal. *Federoff v. Pioneer Title & Trust Co.*, 165 Ariz. 249, 255–56, 798 P.2d 387, 393–94 (App.1990).

## DISCUSSION

We first must determine whether the restrictive covenants established between the original grantors are enforceable, as a matter of fact, as class three covenants under *O'Malley v. Central Methodist Church*. For more than forty years, this court has followed the rule established in *O'Malley* that agreements between adjoining landowners can be enforced by subsequent grantees against other grantees who violate the agreement. The court in *O'Malley* divided restrictive covenants into three distinct classes:

> In the first class may be placed those which are entered into with the design to carry out a general scheme for the im-

provement or development of real property.... The second class embraces those cases in which the grantor exacts a covenant from his grantee, presumptively or actually, for the benefit and protection of contiguous or neighboring lands which the former retains.... Then there is a third class, where there are mutual covenants between the owners of adjoining lands, in which the restrictions placed upon each produce a corresponding benefit to the other, and in such a case of course, either party or his assigns may invoke equitable aid to restrain a violation of the covenant.

67 Ariz. at 250–51, 194 P.2d at 448 (quoting *Korn v. Campbell*, 192 N.Y. 490, 495, 85 N.E. 687, 689 (1908)) (citations omitted).

■ There is no disagreement that the restrictions created under the agreement are class three covenants. The court of appeals limited its analysis to cases involving class three covenants only. The initial determination focuses on whether the original grantors intended that the recorded document run with the land, and whether they satisfied the other requirements necessary for the restrictions to run with the land. Generally, a covenant or restriction runs with the land in equity if four elements are met: (1) there is an enforceable promise between the original parties; (2) the promise touches and concerns the land; (3) the parties intended to bind their successors; and (4) the successors have notice of the restriction. 5 Powell, *The Law of Real Property* ¶ 673[2] (1990).

■ The original grantors, Logan and Kingstrand, drew up an agreement containing mutual covenants that restricted use of their property. The recorded documents are contracts that are immediately enforceable between the parties upon execution. Neither party may rescind or change the covenants without the consent of the other. In this case, the original grantors included specific language to that effect in the recorded document. Paragraph nine allows the owners of the property covered by the agreement to terminate the restrictions in a written, recorded instrument. These restrictions produce a corresponding benefit to both parties by allowing each to rely on the knowledge that the restrictions could be enforced should the other grantor convey his land to a grantee. These restrictions apply directly to the land and therefore touch and concern it. Additionally, paragraphs nine and ten of the agreement indicate that the restrictions are intended to run with the land. Paragraph nine states that "[t]he above restrictions, reservations, and conditions shall run with the land," and paragraph ten states that the "provisions, conditions, and covenants shall be a covenant running with the land."

Notice, the final element for a covenant to run with the land, involves one of Arizona's recording statutes. By recording the document in the county recorder's office, the original grantors put all persons on notice that the document existed. A.R.S. § 33–416, the recording statute involved in this case, states:

> The record of a grant, deed or instrument in writing authorized or required to be recorded, which has been duly acknowledged and recorded in the proper county, *shall be notice to all persons of the existence of such grant, deed, or instrument* .... (Emphasis added).

■ The function of our recording statutes is to protect persons who deal with interests in land by giving notice. This protects against claims or obligations by subsequent purchasers without notice. *Hardine v. Pioneer Nat'l Title Ins.*, 145 Ariz. 83, 85, 699 P.2d 1314, 1316 (App.1985) (citing *Chantler v. Wood*, 6 Ariz.App. 134, 137, 430 P.2d 713, 716, *opinion supplemented on other grounds*, 6 Ariz.App. 325, 432 P.2d 469 (1967)). Under the rules of constructive notice, a successor in interest is charged with notice of any equitable covenant that is properly recorded in a prior instrument and for which the successor is required to search. The successor takes the property bound by the covenant and must comply with it. *Murphey v. Gray*, 84 Ariz. 299, 304–05, 327 P.2d 751, 755 (1958) (quoting 4 *Pomeroy's Equity Jurisprudence* § 1295 (5th ed.)). Appellees also had actual notice that there were restrictions on the use of the property from

references to them in the preliminary title report and the subdivision report.

The trial court found that but for the changed conditions that were present, it "would find the restrictions to be valid and binding upon the [appellees], and that [appellants] would be entitled to enforce them by injunction." When we review the trial court's findings, we adopt a deferential standard of review. Our duty begins and ends with inquiring whether the trial court had before it evidence that might reasonably support its action when viewed in the light most favorable to sustaining the findings. *Tanque Verde Enters. v. City of Tucson*, 142 Ariz. 536, 542, 691 P.2d 302, 308 (1984). The trial judge makes factual determinations in the first instance, and we will sustain these findings unless they are clearly erroneous or unsupported by any credible evidence. *Imperial Litho/Graphics v. M.J. Enters.*, 152 Ariz. 68, 72, 730 P.2d 245, 249 (App.1986).

Because we believe the trial court had evidence before it to support a finding that these restrictive covenants are enforceable as to subsequent grantees, we will not disturb that finding. We hold that the restrictive covenants established by the original grantors are enforceable, as a matter of fact, as class three covenants.

Having made this determination, we now must address whether enforcement of these restrictions is precluded, as a matter of law, by *Werner v. Graham* because the failure to incorporate the recorded covenants into the deeds of the subsequent grantees' deeds made the covenants personal to the original grantors.[1]

As Judge Livermore of the court of appeals noted in his dissent in this case, nothing in the *O'Malley* opinion suggests that an original grantor bound by a class three mutual restriction may convey or deed his lands free of restrictions to a purchaser

taking with actual or constructive knowledge of them. In fact, the language of *O'Malley* precludes such a result. *O'Malley* states that "either party or his assigns may invoke equitable aid to restrain a violation of the covenant." 67 Ariz. at 251, 194 P.2d at 448 (quoting *Korn*, 192 N.Y. at 496, 85 N.E. at 689 (citation omitted)).

The majority in the court of appeals attempts to avoid this result by relying on a rule established in a line of California cases and sometimes applied in Arizona cases, the genesis of which is *Werner v. Graham*.[2] The court appears to read these cases as standing for the proposition that property may be deeded free of restrictions of record, or that recorded restrictions are abandoned once property is deeded without reference to them. We believe reliance on this line of cases is misguided.

These cases are easily distinguished from the case at hand. All involved a variation of the common scheme/common grantor situation, which are class one covenants under the *O'Malley* analysis. Unlike class three covenants, which we have in this case, class one covenants must reference recorded restrictions in the deeds of original grantees to be enforceable amongst subsequent grantees. When there is a single owner, no dominant and servient tenements are created in the property and it merely requires a unilateral act on the part of the common grantor to change the restrictions in any manner, at any time. *See Gardner v. Maffitt*, 335 Mo. 959, 74 S.W.2d 604 (1934).

The court of appeals' reliance on these cases is further eroded because it has misapplied the holdings of the *Werner* line of cases. In *Werner*, a common grantor situation, the property at issue was not subject to any restrictions because the deeds conveying it contained no mention of the restrictions. The court in *Werner* went on to say that "mutual servitudes spring into

---

1. The primary distinction between real and personal covenants is that real covenants run with the land and bind heirs and assigns of the covenanting parties while personal covenants do not. *See Tarrant Appraisal Dist. v. Colonial Country Club*, 767 S.W.2d 230, 235 (Tex.Ct.App. 1989).

2. *See also Murry v. Lovell*, 132 Cal.App.2d 30, 281 P.2d 316 (1955); *Colonia Verde Homeowners Ass'n v. Kaufman*, 122 Ariz. 574, 596 P.2d 712 (App.1979); *Palermo v. Allen*, 91 Ariz. 57, 369 P.2d 906 (1962).

existence as between the first parcel conveyed and the balance of the parcels at the time of the first conveyance." 181 Cal. at 183, 183 P. at 949.

Two more recent California cases, however, clarify the rule in common grantor situations. In *Seaton v. Clifford*, the court found that by including restrictions in the first deed from a developer to the first purchaser, the equitable servitude had been created. 100 Cal.Rptr. 779, 780–81, 24 Cal. App.3d 46, 47–51 (1972). The lack of reference to the restrictions in the later deed did not extinguish them. *Id.* at 780, 24 Cal. App.3d at 47–49. Finally, in *Riley v. Bear Creek Planning Committee*, the California Supreme Court summarized the rule regarding the enforceability of restrictive covenants as to subsequent grantees. It stated:

> From the recordation of the first deed which effectively imposes restrictions on the land conveyed and that retained by the common grantor, the restrictions are binding upon all subsequent grantees of parcels so affected who take with notice thereof *notwithstanding that similar clauses have been omitted from their deeds ....*

17 Cal.3d 500, 507, 551 P.2d 1213, 1218, 131 Cal.Rptr. 381, 386 (1976) (emphasis added) (citations omitted).

■ Thus, the very cases cited by the majority of the court of appeals as standing for the proposition that failure to incorporate recorded covenants into the deeds of subsequent grantees makes the covenants personal to the original grantors and therefore unenforceable, have no effect. We do follow the *Werner* rule in so far as it applies to mutually enforceable servitudes in common grantor situations. When such facts are before us, the intent of the grantors must be ascertained from the language of the deeds. *Colonia Verde Homeowners Ass'n v. Kaufman*, 122 Ariz. 574, 577, 596 P.2d 712, 715, (App.1979). In this case, however, we have covenants that were established between adjoining landowners, not a common grantor. The property that passed from Logan to the initial grantee, McBarnes, acknowledged the restrictions in a recorded document. In such situations, the failure to incorporate such restrictions into the deeds of subsequent grantees does not, by itself, make the restrictions personal. Therefore, enforcement of these restrictions is not automatically precluded as a matter of law.

## CONCLUSION

We hold that the restrictive covenants established by the original grantors are enforceable as class three covenants, and that enforcement of these covenants is not precluded by *Werner v. Graham*. Therefore, in this case, we have class three covenants that run with the land. The fact that they are not listed in subsequent grantees' deeds is not fatal to their enforcement. The equitable defense of changed economic conditions was raised at trial, and the trial court found economic infeasibility as to one of the covenants. The court of appeals reversed, stating that a mere change in economic conditions making it unprofitable to continue to enforce the covenant is not sufficient to find it unenforceable. The court of appeals' conclusion on this point has not been presented to us on review and is not before us. Therefore, that portion of the court of appeals' opinion stands, and the covenants are enforceable as recorded.

The court of appeals' grant of attorney's fees is vacated. We remand this case to the trial court for a determination of the appropriate remedy for appellees' breach of these enforceable covenants and for it to review and grant attorney's fees and costs where appropriate.

MOELLER and CORCORAN, JJ., concur.