NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MICHAEL LEE JORDAN, *Petitioner/Appellant*,

*v.*

SARAH ELIZABETH SMITH, *Respondent/Appellee*.

No. 1 CA-CV 14-0365 FC
FILED 3-31-2015

Appeal from the Superior Court in Maricopa County
No.  FC2012-007909
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Michael Lee Jordan
*Petitioner/Appellant*

Steven R. Garcia, P.L.L.C., Phoenix
By Steven R. Garcia
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge John C. Gemmill delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Donn Kessler joined.

---

**G E M M I L L**, Judge:

¶1    Michael L. Jordan ("Father") appeals the family court's order authorizing relocation of minor child, A.S., with Sarah E. Smith ("Mother"), including the best interests finding.  For the reasons that follow, we affirm.

**FACTS**

¶2    In October 2012, Father filed in Maricopa County Superior Court a petition for paternity, child custody, parenting time, and child support regarding A.S.  Mother's counsel accepted service on her behalf because Mother had moved to Pennsylvania with A.S.  Mother filed a response in February 2013.  Both parents requested sole custody of the minor child, reasonable parenting time for the other parent, and for child support to be paid by the non-custodial parent.  Mother, however, asked the court to approve a "long distance" parenting plan because she lived in Pennsylvania.

¶3    In March 2013, the parties entered into an agreement, stipulating that Father was the biological father and each party would undergo a psychological evaluation.  The family court appointed Dr. S.F. to conduct the evaluations and prepare a written report.  The court also ordered that the report would be entered into evidence despite any evidentiary objections that could be made.

¶4    The court issued temporary orders in a May 2013 minute entry.  The family court found that it had jurisdiction because A.S. resided in Arizona from the time of her birth until she relocated to Pennsylvania with Mother.  The court issued orders regarding visitation, child support, and legal decision making.  The court granted the parties joint legal decision making, allowed Mother to remain in Pennsylvania, and ordered her to provide Father with weekly updates regarding A.S.  Father was ordered to pay child support and granted visitation time in Pennsylvania.  Also, the court granted Father a downward deviation in child support because of his anticipated travel costs to visit A.S.

**¶5** In August 2013, the parties stipulated to follow Dr. S.F.'s recommendations. The parties agreed that they would abstain from consuming alcohol, participate in ongoing treatment pursuant to the diagnostic hypotheses generated by Dr. S.F., and submit to weekly random urinalysis through TASC. Furthermore, Father agreed to seek treatment for alcohol abuse.

**¶6** The family court conducted a trial in September 2013 and issued a paternity decree on October 1, 2013. In the paternity decree, the court made best interests findings pursuant to Arizona Revised Statutes ("A.R.S.") § 25-408(H). The court found that both parties had failed to comply with certain portions of the stipulated agreements and court orders. Mother did not submit weekly urinalysis samples for testing. Father failed to pay child support and admitted to using his money for personal entertainment rather than saving it for travel to see A.S. The court did find that the parties complied with other provisions of the agreements and orders. Father visited A.S. in Pennsylvania on one occasion. It was reported by a supervisor and Father's mother that the visit went well. Mother emailed weekly updates to Father, through her counsel, and attached pictures of A.S.; Father, however, did not respond. The court was most concerned, though, with both parents' history of substance abuse. Therefore, the court issued orders regarding relocation, legal decision making, and parenting time that could vary contingent upon Mother and Father's completion by February 28, 2014 of a compliance plan ordered by the court.

**¶7** The compliance plan for both parents mandated that they participate in ongoing treatment pursuant to Dr. S.F.'s diagnostic hypotheses and in random urinalysis testing. Specifically for Father, the court required that: he abstain from consuming alcohol for twelve months; wear a SCRAM bracelet detecting alcohol consumption for four months; complete a parenting class and a 20-week class through Community Bridges; exercise parenting time every month in Pennsylvania; and comply with his financial obligations of child support and arrearages. The court required Mother to abstain from alcohol consumption during her parenting time.

**¶8** Father filed a compliance plan report in January 2014. He asserted that he was compliant with most of the requirements except the SCRAM bracelet requirement, which he argued was because of the cost. He requested that the court exclude this requirement due to financial hardship

and because he had not consumed alcohol for six months. Mother also filed a compliance report that indicated she fully complied with the court's orders. The court denied Father's request and noted that he had not attempted to comply with the SCRAM bracelet requirement until December 2013, which was two months after the court issued the compliance plan. Father then filed a second compliance plan report on February 18, 2014 where he averred that he was in compliance with the SCRAM bracelet requirement. Finally, on February 25, Father moved to extend the time to complete the compliance plan acknowledging he would be unable to complete the plan's requirements by the 28th. He argued that he overpaid the arrearage obligation and had "third-party funding" that would give him the ability to comply with the financial requirements. By February 28, Mother was fully compliant. In a response to Father's motion to extend, Mother contended that Father had not paid arrearages in full.

¶9            After reviewing the compliance plan reports and other documents filed by the parents, the court entered findings and orders in a signed ruling filed April 4, 2014 ("April 4 order"). The court found that Father did not enroll in individual counseling treatment until February 28, 2014 and that despite the areas of compliance, Father's efforts were "too little, too late." The court also found that it was in the child's best interests to be allowed to relocate with Mother. Furthermore, the court indicated that the October 1 paternity decree was self-executing and that the provisions of that order were final.

¶10            Father seeks appellate review of certain issues from both the paternity decree and the April 4 order. Mother contends this court lacks jurisdiction regarding the paternity decree because it was a final, appealable order and Father did not appeal within 30 days of the decree. If the paternity decree was final and appealable when entered on October 1, 2013, then Mother is correct and Father cannot now raise issues settled therein. If the decree was not a final judgment, but rather the court's memorialization of alternative outcomes that depended on the parties' performance of the compliance plan and a further order of the court regarding that compliance, then the April 4 order was the final, appealable order. Father's notice of appeal within 30 days after the April 4 order would thus trigger appellate jurisdiction over the decree as well as any issues resolved in the April 4 order. To decide otherwise would require Father to have filed his Notice of Appeal prior to the trial court's final order in which the contingent provisions were to be made applicable. While the trial court did refer to the October 1 decree as a final order, we conclude that in light of the contingencies built into that decree, it was an interlocutory order and

the April 4 order was the final, appealable order. As a result, this court has jurisdiction under A.R.S. § 12-2101(A)(1). We also note that, as the following analysis reveals, the final result is the same either way.

**ANALYSIS**

**¶11** On appeal, Father challenges the order authorizing Mother's relocation to Pennsylvania and the court's best interests finding.[1]

**¶12** The relocation statute, A.R.S. § 25-408, applies when there is (1) a written agreement or court order that provides for custody or parenting time by both parents, and (2) both parents reside in Arizona. *Buencamino v. Noftsinger,* 223 Ariz. 162, 164, ¶¶ 7–10, 221 P.3d 41, 43 (App. 2009) (deciding when the family court is required to consider or make specific findings under the § 25-408(H) factors). We are not certain that, under *Buencamino*, the relocation statute applies in this case. But we need not make that determination. Even if there is no requirement to consider the statutory relocation factors, a family court judge has the discretion to consider them. *Id.* at 164 n.3, ¶ 10, 221 P.3d at 43. Additionally, we note that at the time Father initiated the action, Mother and A.S. were still in Arizona. A temporary court order providing Father with visitation rights and joint legal decision-making was entered in May 2013, after Mother moved to Pennsylvania. In that order, the court acknowledged that at no time prior did there exist a court order for legal decision-making or custody. The court, however, allowed Mother to remain in Pennsylvania pending a final decision and indicated that the court would treat the move as a request for relocation. Therefore, although both elements identified in *Buencamino* may not have been fully satisfied during this action, no error occurred when the family court chose to consider the relocation factors listed under A.R.S. § 25-408(H).

---

[1] Father presented additional issues regarding the psychologist's recommendations and the denial of his motion to extend the compliance deadline. The brief provides no citation to the record or relevant supporting authority; therefore we will not review those issues. *See* ARCAP 13(a)(6) (an appellant's brief shall contain arguments "with citations to the authorities, statutes and parts of the record relied on"); *Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491 n.2, ¶ 6, 154 P.3d 391, 393 n.2 (App. 2007) (finding an argument waived because appellant failed to cite relevant supporting authority and did not adequately develop the argument).

**¶13**        This court reviews a relocation decision for an abuse of discretion. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19, 219 P.3d 258, 262 (App. 2009). An abuse of discretion exists when there is no competent evidence supporting the decision or if the court commits an error of law. *Id.*; *Fuentes v. Fuentes*, 209 Ariz. 51, 56, ¶ 23, 97 P.3d 876, 881 (App. 2004). This court will accept the trial court's factual findings unless clearly erroneous or unsupported by credible evidence. *Federoff v. Pioneer Title & Trust Co. of Ariz.*, 166 Ariz. 383, 388, 803 P.2d 104, 109 (1990).

**¶14**        The family court may allow relocation when it is in the child's best interests. A.R.S. § 25-408(F). The burden of proving relocation is in the child's best interests is on the parent seeking to relocate. *Id.* The family court is required to make specific findings on the record supporting its decision that relocation is in the best interests of the child. *Hurd*, 223 Ariz. at 52, ¶ 20, 219 P.3d at 263; *see also Owen v. Blackhawk,* 206 Ariz. 418, 420–22, ¶¶ 8, 12, 79 P.3d 667, 669–71 (App. 2003) (requiring the family court to explain how it weighed the relocation factors). The family court is required to consider "all relevant factors" in accordance with A.R.S. § 25-408(H), including:

> 1.  The factors prescribed under § 25–403.

> 2.  Whether the relocation is being made or opposed in good faith and not to interfere with or to frustrate the relationship between the child and the other parent or the other parent's right of access to the child.

> 3.  The prospective advantage of the move for improving the general quality of life for the custodial parent or for the child.

> 4.  The likelihood that the parent with whom the child will reside after the relocation will comply with parenting time orders.

> 5.  Whether the relocation will allow a realistic opportunity for parenting time with each parent.

> 6.  The extent to which moving or not moving will affect the emotional, physical or developmental needs of the child.

7. The motives of the parents and the validity of the reasons given for moving or opposing the move including the extent to which either parent may intend to gain a financial advantage regarding continuing child support obligations.

8. The potential effect of relocation on the child's stability.

**A. October 2013 Paternity Decree**

**¶15**      In the October 2013 paternity decree, the family court made specific findings pursuant to § 25-408(H). The court found that Mother relocated to Pennsylvania for safety concerns and to be closer to family, but that given the distance Father's ability to visit A.S. was limited. *See* A.R.S. § 25-408(H)(2)–(3) & (5). The court indicated there were concerns with "Mother's willingness to involve Father in decision-making." *See* A.R.S. § 25-408(H)(4). It further found that each parent's motivation was a "genuine desire to spend time with the child" and that relocating to Pennsylvania would not undermine A.S.'s stability if the relocation occurred before the child turned two-years old. *See* A.R.S. § 25-408(H)(7)–(8). Testimony and documentary evidence supported the court's factual findings. *See Federoff*, 166 Ariz. at 388, 803 P.2d at 109.

**¶16**      In accordance with A.R.S. § 25-408(H)(1), the family court is required to perform further factual analysis by evaluating the factors found within A.R.S. § 25-403(A) in order to determine the child's best interests. The factors in § 25-403(A) include:

1. The past, present and potential future relationship between the parent and the child.

2. The interaction and interrelationship of the child with the child's parent or parents, the child's siblings and any other person who may significantly affect the child's best interest.

3. The child's adjustment to home, school and community.

4. If the child is of suitable age and maturity, the wishes of the child as to legal decision-making and parenting time.

5. The mental and physical health of all individuals involved.

6. Which parent is more likely to allow the child frequent, meaningful and continuing contact with the other parent. This paragraph does not apply if the court determines that a parent is acting in good faith to protect the child from witnessing an act of domestic violence or being a victim of domestic violence or child abuse.

7. Whether one parent intentionally misled the court to cause an unnecessary delay, to increase the cost of litigation or to persuade the court to give a legal decision-making or a parenting time preference to that parent.

8. Whether there has been domestic violence or child abuse pursuant to § 25-403.03.

9. The nature and extent of coercion or duress used by a parent in obtaining an agreement regarding legal decision-making or parenting time.

10. Whether a parent has complied with chapter 3, article 5 of this title.

11. Whether either parent was convicted of an act of false reporting of child abuse or neglect under § 13-2907.02.

¶17 The court made specific findings regarding each of these factors and credible evidence supported those findings. It found that A.S. was thriving in Pennsylvania and has a good relationship with Mother, Father, and extended family. A.R.S. § 25-403(A)(1)–(3). Mother provided Father with updates regarding A.S. but she has not allowed Father to participate in decision-making. A.R.S. § 25-403(A)(6).

¶18            The court was most concerned with Father and Mother's mental health and history of alcohol use. *See* A.R.S. § 25-403(A)(5); *see also* A.R.S. § 25-403.04. The court concluded, based on Dr. S.F.'s report and testimony, that each parent had a history of alcohol abuse. Credible evidence supported that conclusion. Dr. S.F. examined both parents in May 2013. In June 2013, Father was discharged from his employment for "showing up under the influence" of alcohol. The court found that Mother had worked in a bar for ten years and that she has also driven under the influence. Because of the parents' history of alcohol abuse, Dr. S.F. made recommendations to resolve those issues and the parties stipulated to follow them. The court found that neither parent had "followed-up" with all of Dr. S.F.'s recommendations. As to Mother, the court found that she had failed to undergo alcohol screenings. Regarding Father, the family court found that he had not complied with the court's orders to pay child support. The court found, instead, that Father used this money for other entertainment activities rather than paying child support or saving money for travel to visit A.S. The evidence supported the court's findings. The court, however, offered Father and Mother another opportunity to remedy these issues by instituting the compliance plan to be completed by February 28, 2014.

¶19            The court concluded, in the October 2013 paternity decree, that "determining the best interests of the Child at [the] time require[d] balancing a number of considerations." The record supports this conclusion. Neither parent clearly proved to the court that they could comply with court orders. Nor had the parents persuaded the court that their history of alcohol abuse should no longer be a concern. The court found that if Father could remedy the concerns raised by Dr. S.F., then a return to Arizona would be in the child's best interests; however, if he could not, then the court would authorize relocation. The court indicated similar concerns regarding Mother and her ability to parent.

## B. April 4 Order

¶20            After the February 28 deadline passed, the court entered its findings in the April 4 order. The court concluded that Father made efforts to adhere to the compliance plan but ultimately failed to complete all the terms. Specifically, the court found that Father failed to enroll in treatment that he had agreed to and the court had ordered after Dr. S.F. recommended it. As a result, the family court authorized relocation because it concluded it was in the child's best interests to achieve permanency and stability. The evidence supporting that determination, and the findings from §§ 25-

403(A) and -408(H) included in the October 2013 paternity decree, support the conclusion in the April 4 order that relocation with Mother was in the child's best interests.

**ATTORNEY FEES ON APPEAL**

**¶21**        Mother requested an award of attorney fees on appeal, citing A.R.S. §§ 12-349 and 25-324.  We conclude that § 12-349 is not applicable. Section 25-324, however, is applicable.  But having considered the factors set forth in A.R.S. § 25-324 and in the exercise of our discretion, we deny Mother's request for an award of fees.  As the prevailing party on appeal, Mother is entitled to an award of taxable costs incurred on appeal upon her compliance with ARCAP 21.

**CONCLUSION**

**¶22**        The family court made the specific findings necessary under the law, and those findings are supported by credible evidence and not clearly erroneous.  We conclude that the family court did not abuse its discretion, and for these reasons we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama