NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

SYDNEE J., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.J., *Appellees.*

No. 1 CA-JV 18-0157
FILED 11-29-2018

Appeal from the Superior Court in Apache County
No. S0100JD201400018
The Honorable C. Allan Perkins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Nicholas D. Patton, Attorney at Law PLLC, Show Low
By Nicholas D. Patton
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Paul J. McMurdie and Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1        Sydnee J. ("Mother") appeals the termination of her parental rights to her daughter, M.J., arguing that the Department of Child Safety ("DCS") failed to provide sufficient services for reunification. DCS challenges our jurisdiction over this matter and counters that the superior court did not err in its ruling. Because the record demonstrates that Mother had sufficient opportunity to participate with reunification services, we affirm.

**BACKGROUND[1]**

¶2        Prior to the present case, Mother's parental rights to M.J.'s older sibling were terminated. Because of DCS involvement with the other child, who was born substance-exposed, the Department was aware of the parenting challenges Mother faced. DCS acted on information that Mother was living with M.J. in a Phoenix home with other drug users. After attempting to take the child into DCS custody, case workers learned that Mother and daughter had relocated to Washington State. In September 2016, DCS coordinated with child protective services there to arrange for the child to be returned to Arizona. Shortly after the child arrived in Arizona, DCS ordered a hair follicle test that resulted in a positive reading for the presence of methamphetamine, showing that the child had been exposed to the drug.

¶3        Mother initially remained in Washington. DCS offered to facilitate visitation with her daughter via Skype. Mother at first declined, but eventually agreed to begin Skype visits in April 2017. Mother failed to call and confirm visits so none occurred. Mother did not regularly respond

---

[1]       "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

to DCS communication while in Washington State. After a hearing in May 2017, the court found the child dependent as to Mother.

¶4        In June 2017, Mother returned to Arizona. DCS became aware of Mother's presence in the state after a call from the child's care provider who reported she saw Mother in the community. Mother had not been in contact with her daughter since October 2016. Upon reconnecting with Mother, DCS provided a case plan and services to reunify Mother and child, encouraging Mother to maintain consistent communication, stable housing and employment, urinalysis testing with clean results, and to participate in substance abuse treatment, individual counseling, and parent aid services. Mother knew of DCS's expectations because she reviewed the case plan with Department personnel, who also sent her monthly service letters.

¶5        DCS personnel contacted Mother to set up supervised visits in August 2017. Several visits took place, but Mother's attendance was "sporadic." Moreover, she missed multiple urinalysis tests and did not otherwise indicate to the Department that she was addressing her substance abuse. Mother also failed to provide any monetary support for her daughter during the course of the case or to inform DCS whether she had secured employment or housing.

¶6        In October 2017, DCS moved to terminate Mother's parental rights, and in February 2018 the court held a contested severance hearing. The DCS case manager testified that Mother failed to remedy the safety concerns that caused her daughter to come into DCS custody and that she failed to regularly participate in the offered services. Specifically, a DCS case aid testified that in the month prior to the termination hearing, only one out of nine scheduled visits occurred. DCS designated six of the nine visits as "no-shows" because Mother failed to attend. The case manager opined that terminating Mother's parental rights was in the child's best interests because she was living with her grandmother, who had agreed to adopt her, and because the child would remain without permanency if severance did not occur.

¶7        The court issued a final order terminating Mother's parental rights in February 2018. Under Arizona Revised Statutes ("A.R.S.") § 8-533, the court found several statutory grounds for termination proven by clear and convincing evidence. These grounds included abandonment, neglect, chronic abuse of dangerous drugs, and leaving a child in an out-of-home placement for a cumulative total of nine months or longer. The court also found, by a preponderance of the evidence, that termination was in the child's best interests. The court reasoned that while DCS extended "a

diligent effort" to facilitate reunification, "Mother substantially neglected or willfully refused to remedy the circumstances that cause[d] the child to be in an out-of-home placement including . . . the refusal to participate in reunification services offered" by DCS. Mother filed a notice of appeal.

## DISCUSSION

**I.      Mother's notice of appeal was timely and therefore we have jurisdiction on appeal.**

**¶8**         As a preliminary matter, DCS argues that we lack jurisdiction because the notice of appeal was filed more than two months after the juvenile court entered its termination order. We review de novo questions of appellate jurisdiction. *State v. Serrano*, 234 Ariz. 491, 493, ¶ 4 (App. 2014). Under Rule 104(A) of the Rules of Procedure for the Juvenile Court, a notice of appeal from juvenile court must be filed with the clerk of the superior court no later than 15 days after the final order is filed. This deadline may only be extended upon motion "where the failure to timely file was the result of excusable neglect." Ariz. R.P. Juv. Ct. 108(B).

**¶9**         The court issued its final order on February 26, 2018. In the top right corner of the notice of appeal, two stamps appear: one indicates that the document was "received" on March 13, 2018; the other stamp indicates that the document was "filed" on May 4, 2018 and includes the name of the county clerk. On May 4, the superior court issued an order deeming the notice timely, "find[ing] that there was a clerical error."

**¶10**       DCS argues that this finding was in error because Rule 108 precludes the superior court from extending the time for filing except in cases of excusable neglect. We disagree. If a party on appeal challenges the accuracy of something material on the record, "the juvenile court, either before or after the record is transmitted to the appellate court, or the appellate court on motion or on its own initiative, may direct that the omission or misstatement be corrected." Ariz. R.P. Juv. Ct. 104(F)(2). Here, the court did not extend Mother's time for filing; it found that she had timely filed her notice of appeal. In essence, the court determined that the March date stamp established the date of filing and that there was an error made by the clerk, not Mother. It was within the superior court's power to correct a clerical error prior to appeal, and we have no reason to question the superior court's order. *See Federoff v. Pioneer Title & Tr. Co. of Ariz.*, 166 Ariz. 383, 388 (1990) ("The trial judge makes factual determinations in the first instance, and we will sustain these findings unless they are clearly

erroneous . . . .”). Thus, the notice of appeal was timely and we have jurisdiction over this matter.

## II.   The court did not err in terminating Mother's parental rights.

**¶11**       To terminate parental rights under A.R.S. § 8-533(B), the superior court must find that a statutory ground exists by clear and convincing evidence. A.R.S. § 8-537(B). The court must also find by a preponderance of the evidence that termination is in the child's best interests. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶¶ 41-42 (2005). In making these determinations, the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). This court will only reverse the superior court's order if no reasonable evidence supports its factual findings. *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 287, ¶ 16 (App. 2016).

**¶12**       Mother argues that her parental rights should not have been terminated because DCS failed to make reasonable efforts to provide services to help her maintain the relationship with her child. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 33 (App. 1999) ("Arizona courts have long required the State . . . to demonstrate that it has made a reasonable effort to preserve the family."). DCS argues that we need not consider Mother's argument because termination based on abandonment under A.R.S. § 8-533(B)(1) imposes no such duty on DCS. *See Toni W. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 66, ¶ 15 (App. 1999) (holding that in the absence of an existing parent-child relationship, a mother was not entitled to be provided reunification services). Thus, DCS urges us to affirm on the abandonment ground, which would allow us to disregard Mother's argument on appeal entirely. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 3 (App. 2002) ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds.") Regardless, Mother was given sufficient opportunity to participate in reunification services.

**¶13**       Mother asserts that "DCS all but ceased its efforts to help [her] at least as of November 2017." We disagree. DCS made multiple attempts, as reflected in this record, to offer Mother services throughout the entirety of the case, but Mother failed to avail herself of the offered services. Even in the month prior to the contested hearing, DCS facilitated visitation between Mother and the child despite Mother's repeated "no-shows." Mother argues that she found part-time employment and housing around

November 2017, a full year after her daughter was removed from her care. However, Mother admitted at the contested hearing that she had not notified DCS of her progress. Mother understood the steps that needed to be taken for reunification with her daughter. Still, she did not submit to regular drug testing or substance abuse treatment, often missed supervised visits, and did not provide any monetary support. Termination of her parental rights occurred more than a year after DCS first offered Mother services. Based on this record, the superior court correctly found that DCS made diligent efforts toward reunification.

**CONCLUSION**

¶14        For the foregoing reasons, we affirm the superior court's termination order.



AMY M. WOOD • Clerk of the Court
FILED:  AA